No. 22,630.

M. F. KING, J. S. NUCKOLS and W. M. THOMPSON, *Appellees*, v. B. ALARD SMITH and MRS. B. ALARD SMITH, *Appellants*.

SYLLABUS BY THE COURT.

CHURCH CONTROVERSIES—*Expulsion of Members—Deposition of Pastor—Jurisdiction of Civil Courts.* Controversies in a church relating to the admission or expulsion of members, the retention or deposition of a pastor, and with reference to its organization and internal affairs, where no civil or property right is involved, are determinable by the church authorities according to the laws and usages of the church, and ordinarily the civil courts are without jurisdiction to supervise, review or control the decisions of such tribunals, or to appoint a receiver for the direction and control of the members in church meetings.

Appeal from Sedgwick district court, division No. 1; RICHARD E. BIRD, judge. Opinion filed April 10, 1920. Reversed.

*Freeman L. Martin,* and *H. W. Hart,* both of Wichita, for the appellants.

*Fred C. Helm,* and *O. H. Bentley,* both of Wichita, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by M. F. King, J. S. Nuckols, and W. M. Thompson, alleged members of the Wabash Baptist church of Wichita, against B. Alard Smith and his wife, who are respectively pastor and secretary of that church, to enjoin them from acting in the capacities named, also from withholding the keys of the church and interfering with meetings desired to be held therein. Temporary injunction was allowed, and upon a trial the court held that there had been irregularities in the meetings in which certain members had been expelled from the church, and that the irregularities were sufficient to warrant the court in declaring the offices of pastor and secretary as well as the deacons and all other offices vacant. It was further found that there was danger of the insolvency and dissolution of the church, and in addition to declaring the vacancies, the court appointed a receiver who

King v. Smith.

was directed to call a meeting of the members of the church on a day named, at which only members whose names were on the roll as prepared by the court would be allowed to vote, and that they should then choose a pastor and officers of the church, and the court would retain jurisdiction of the case long enough to put the church into a healthy, going condition.

The defendants complain of the rulings of the court and contend that only matters of discipline and church government were involved, such as the expulsion of members, the removal of the pastor and other officers, and that these are all matters to be settled by the church tribunals and not by the court, or through the intervention of a receiver appointed by the court. The differences and disputes that had arisen in the church were mostly questions for the determination of its own tribunals. Property rights were not the questions that divided the parties. It appears that the pastor had been in charge of the church for more than two years, and although there had been divisions in the church, the evidence tends to show that a majority of the members were favorable to the pastor, and also that he had met with considerable success in bringing in new members, raising money for church purposes, and for the reduction of church indebtedness.

The nature of the issue and the view taken of it by the court is indicated in its opinion rendered at the time the decision was made. After finding that the meetings had not been regularly called and held because of the absence of proper notices, and that those who had been excluded from the church had not been regularly excluded, it was remarked:

"The taking of a name off of a church roll is a serious matter, and oftentimes affects a person's spiritual welfare and has a tendency for them to depart from the church. There are some people here against whom there has been some aspersion, but in the absence of a direct proper action they are your membership as it appears on the roll. You are in a general court of equity. There has been enough of irregularity and there has been enough of regularity in this last meeting to warrant a court of equity in declaring all offices vacant, including pastor, secretary and deacons; and this court does declare all offices vacant."

The church has its own tribunal and its own rules and procedure for the determination of its internal affairs, and their decision in controversies as to the discipline and expulson of

members and the dissolution of the pastoral relation, where no civil or property right is involved, is ordinarily binding upon civil courts. (*Watson v. Jones,* 13 Wallace, 679; Note, 49 L. R. A. 384; 23 R. C. L. 440; Note, 24 L. R. A., n. s., 692; Note, 36 L. R. A., n. s., 945; 34 Cyc. 1182.) According to the Standard Manual, an accepted authority of the church, the relationship between pastor and church may be dissolved by mutual consent, or "at the option of either by giving three months' notice." The church is an independent and self-governing organization, administering its own government by a majority of its members. When a controversy arises, such as the discipline or exclusion of a member of the church, or the deposition of a pastor, and it is decided by the members, the decision is final. According to the manual:

"There is no power civil or ecclesiastical that can reverse its decision or punish it for wrongdoing. It may make mistakes but no human tribunal has authority to compel it to confess or correct them."

It is further provided that if an excluded member thinks he has been dealt with unjustly, he may ask for a rehearing, and if that is refused, he may appeal to the members to unite with him in calling a mutual council to be organized within the church, all parties agreeing to abide by its decision. If this is refused, the excluded member may call an *ex parte* council, but its decision is only advisory. The real controversies between the parties here are the expulsion of members and the deposition of the pastor, and full provision is made for the settlement of such controversies by the law and usages of the church. In *Church v. Dart,* 67 S. C. 338, it was held that when no property or civil rights are involved, the action of the church authorities in the deposition of a pastor and the expulsion of members is final. In a note to a report of that case in 100 Am. St. Rep. 734, it is said:

"We apprehend that the rule is universal and uniformly applied that civil courts have no jurisdiction to review the judgments or acts of the governing body or authorities of a religious organization with reference to its internal affairs, for the purpose of ascertaining their regularity or accordance with the discipline and usages of such organization. In other words, civil courts have no jurisdiction to review or revise the proceedings during trial by, or judgments of, church tribunals, constituted by the organic laws of the church organization, where they involve solely questions of the church organization, doctrine, or discipline, or infractions

King v. Smith.

of the laws and ordinances enacted by the ruling body of the church for the government of its officers and members."

Many cases are cited in support of the rule stated.

In respect to the expulsion of members by church tribunals, in the same note it is said:

"The civil courts are without jurisdiction, either to review their determination on the facts or the finality of their decision, and the question of church membership is purely ecclesiastical, and no civil right is involved in the claim of right to be regarded as a member or communicant of a particular church. . . . Every person entering into a church organization impliedly, if not expressly, covenants to conform to its rules and to submit to its authority and discipline, and such church organization has a right to deal with its defaulting members for breach of its discipline, and the civil courts are without jurisdiction to supervise or control such jurisdiction." (p. 737.)

Of course, the decisions of church tribunals are not conclusive on the courts where property or civil rights or the perversion of a trust are involved, but cases of discipline and expulsion of a member are to be determined by the judicatories of the church. Under the issues as framed, the court did not have the authority to revise the membership roll and pass upon the rights of persons to exercise the duties and privileges of church membership. It was not warranted in appointing a receiver to conduct church meetings or to interfere with the officers and members of the church in settling controversies as to the admission and expulsion of members nor their right to determine the retention or deposition of a pastor. These matters are ecclesiastical in character and are to be determined by the authorities of the church according to its laws and usages.

The judgment will therefore be reversed and the cause remanded with directions to enter judgment for the defendants.