G. HERBERT HALL, *ET AL.*, PLAINTIFFS-APPELLANTS, v. PHILIP ALAMPI, ETC., *ET AL.*, DEFENDANTS-RE-SPONDENTS.

Argued January 24, 1966 and March 22, 1966—Decided April 11, 1966.

Mr. *James R. Hillas, Jr.* argued the cause for appellants (*Messrs. Hillas and Thierfelder*, attorneys).

Mr. *Avrom J. Gold*, Deputy Attorney General, argued the cause for respondents (*Mr. Arthur J. Sills*, Attorney General of New Jersey, attorney; *Mr. John C. Love*, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered

Per Curiam. Plaintiffs are resident owners of property in the Township of Chester, Morris County, and in the Township of West Milford, Passaic County, New Jersey. The lands of the plaintiff Hall were sprayed aerially with D. D. T. in May 1962; those of other plaintiffs were sprayed in the same fashion with an insecticide known as Sevin in May 1963; plaintiff Clark's land was sprayed with Sevin in the Spring of 1964; lands of two plaintiffs were not sprayed at all but their properties are in the area. The spraying was done by the Department of Agriculture of the State of New Jersey pursuant to *N. J. S. A.* 4:7–36 to 42 in order to "abate and suppress the gipsy moth and its preliminary stages and to protect therefrom surrounding vegetation or plant life." On April 14, 1964 this action challenging the legality of the spraying program was filed in the Superior

Court, Chancery Division, naming Philip Alampi, Secretary of Agriculture, and Frank A. Soraci, Director, Division of Plant Industry, as defendants.

The complaint alleged that Alampi and Soraci were the officers handling the State gipsy moth control program, Soraci being actively in charge of the spraying operations. It alleged that none of the plaintiffs whose lands were sprayed, with the exception of plaintiff Reginald R. Clark, was given advance notice of the spraying operation as required by the statute. And it attacked the legal propriety of the method of spraying employed by the State in its war on the gipsy moth. The relief sought was (1) an injunction against spraying in the future without compliance with the statutory mandate for notice to affected property owners, (2) an injunction against future spraying because (a) allegedly there is no necessity to abate and suppress the gipsy moth, and (b) if abatement and suppression of the gipsy moth is necessary, the method employed, *i. e.,* aerial spraying with the insecticide used was not a proper way of accomplishing the purpose, and (3) nominal damages for the past trespasses represented by the spraying.

Defendants denied the method of spraying was improper; they alleged their program of abating and suppressing the gipsy moth as well as the methods employed therein were within the statutory authorization. Further they asserted the plaintiffs whose lands were sprayed were given reasonable notice thereof before the operation began in the locality. Defendants also pleaded, among other things, that the suit was in reality against the State of New Jersey, which by virtue of its sovereignty is immune from such actions.

The matter went to trial and at the close of plaintiffs' proof, the court granted defendants' motion for dismissal. An appeal was taken to the Appellate Division but it was certified for disposition in this Court.

The statute in question declares the gipsy moth to be a public nuisance, and that the protection of vegetation or plant life therefrom is a matter of public welfare. *N. J. S. A.*

4:7–36. It authorizes the Department of Agriculture to enter and inspect as it deems necessary any private lands within the State to ascertain whether the plant life or vegetation thereon is free from the gipsy moth and its preliminary stages. *N. J. S. A.* 4:7–37. If evidence thereof is found recourse may be had to "such recognized measures" as the department deems advisable to abate and suppress the gipsy moth and its preliminary stages. Entry on the land by the department's agents to use such remedial measures is authorized. *N. J. S. A.* 4:7–38. But when entry is contemplated the act says:

"At least ten days before entering any lands and premises and starting the work of abating and suppressing the gipsy moth and its preliminary stages * * *, the department shall cause a notice to be served personally or by registered mail on the occupant of the lands and premises, setting forth the nature of the action that it is proposed to take and fixing a time therefor." *N. J. S. A.* 4:7–39.

Defendants concede they did not comply with that provision. It was their view that since the statute was enacted over 40 years ago, its purpose was to require notice to the occupant of the land involved when there was to be a physical entry on the ground by the department's agents or employees. They did not believe it applied to a proposed air flight over the land for the purpose of spraying. Consequently they felt that the more general notice given in the locality of the plan to spray by air was adequate. But the notice section is still in the statute. It is still viable and plainly applies equally to in flight passage over the citizen's land as well as to on land intrusion. If the requirement is not appropriate at the present time and under present conditions of combating the moth, the matter is one for legislative attention. Neither the department nor the courts can ignore or abrogate it.

During oral argument defendants recognized the continued applicability of the notice provision, and the Attorney General in their behalf stipulated that in the future the

mandate of the statute would be honored. Under the circumstances we see no need for further judicial action on the subject at this time.

■ ■ Furthermore, our examination of the record reveals no adequate proof that either the aerial spraying method or the insecticides used are not "recognized measures" within the statutory authorization. *N. J. S. A.* 4:7–38. The method employed by the department is presumptively a proper one, and plaintiffs did not establish by their proof that it did not conform to the specified legislative standard, or that it did not measure up to the standard generally recognized or employed by entomological scientists in combating the gipsy moth. *Cf. Murphy v. Benson,* 164 *F. Supp.* 120, 129 (*E. D. N. Y.* 1958), affirmed on other grounds 270 *F. 2d* 419 (2 *Cir.* 1959), *certiorari* denied 362 *U. S.* 929, 80 *S. Ct.* 750, 4 *L. Ed. 2d* 747 (1960).

■ Finally in our judgment the trial court dealt properly with plaintiffs' claim for nominal damages on account of the trespass arising from the spraying without first giving proper statutory notice to the occupants of the land. A suit of that nature against the Secretary of Agriculture and the Director of Plant Industry, a subordinate officer in the department, is a suit against the State. *Duke Power Co. v. Patten,* 20 *N. J.* 42 (1955). It is therefore within the principle of sovereign immunity, and cannot be maintained without the State's consent. No consent is claimed here. We see no need in this case to consider whether the immunity doctrine should continue to survive in its present absolute form.

We find no merit in any of the other grounds for reversal. The judgment is affirmed. No costs.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO.—6.

*For reversal*—None.