215 N.J. Super. 589 (1987)
522 A.2d 497
ELMORA HEBREW CENTER, INC., A RELIGIOUS CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
YALE M. FISHMAN, CHARLES APTOWITZER, HOWARD POLLICK, MARK MASON AND BRUCE BUECHLER, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 29, 1987.
Decided March 13, 1987.
*590 Before Judges PETRELLA, GAYNOR and SCALERA.
Russell M. Woods argued the cause for appellant (Woods & Trembulak, attorneys).
*591 Rabbi Yale M. Fishman argued and submitted a pro se brief.
Arnold S. Cohen argued the cause for respondents Charles Aptowitzer, Howard Pollick, Mark Mason and Bruce Buechler (Oxfeld, Cohen & Blunda, attorneys).
Steven F. McDowell, pro hac vice, (Steven M. Taieb, attorney) submitted a brief on behalf of amicus curiae, the Catholic League for Religious and Civil Rights.
Daniel D. Chazin filed an amicus curiae brief on behalf of the National Jewish Commission on Law and Public Affairs. (Chazin & Chazin, attorneys).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
This appeal raises an issue of potential interference by a civil court in matters of religious polity, notwithstanding the claim by plaintiff that the issues are solely contractual or civil in nature. Implicated in this appeal is the relationship between Elmora Hebrew Center (EHC), a Jewish synagogue, and its rabbi, and the nature of the action of the Board of Trustees of EHC in attempting to discharge that rabbi, defendant Yale M. Fishman.
EHC filed a complaint[1] in the Chancery Division against the rabbi, as well as against certain other members of the congregation (persons who claim to have been properly elected to supersede the former president of EHC and the Board of Trustees). The complaint against Rabbi Fishman alleged the following as grounds for his discharge:
a) he has not fulfilled his duties as a rabbi to the congregation;
b) he behaved deceptively with regard to his purported employment contract;
c) he lied to the Board of Trustees in the presence of the Holy Torahs in the Sanctuary of the EHC;

*592 d) he subjected the congregation to embarrassment and diminution in the community by revealing himself as a person lacking in the dignity, self-control and judgment required of the spiritual leader of the EHC;
e) he diverted funds granted to the EHC by the Jewish Federation of Union County to a corporation controlled by him without the knowledge or authorization of either the Center or the Federation. In addition, he did not use these funds as agreed but misapplied them;
f) he has been uncooperative and evasive in accounting to the Board of Trustees despite legitimate inquiry into his actions and the corporation controlled by him;
g) he has by his acts and inaction contributed to bringing the EHC to the brink of insolvency and disaster;
h) he has caused division and dissension within the congregation;
i) he has attempted to undermine and circumvent the authority of the Board of Trustees;
j) he has evidenced dishonesty and a lack of candor which makes him inappropriate and unacceptable as the spiritual leader of the EHC;
k) he conspired with other members of the congregation;
l) he disrupted religious services and prevented the religious needs of the congregation from being served, and
m) he threatened members of the congregation.
The Chancery Division Judge properly recognized that it was inappropriate for a civil court to interfere with the religious aspects of the dispute between the parties. Accordingly, Judge Kentz exercised deference regarding the religious aspects of the dispute, and applying equitable concepts, referred the matter to an ecclesiastical tribunal provided by the Union of Orthodox Rabbis of the United States and Canada, known as Beth Din, which is established to resolve religious disputes between rabbis and their congregations. Judge Kentz specifically said that he was doing this under his equitable authority, and stated that he was reserving any remaining contract or civil issues for resolution after the Beth Din's determination. EHC, through its Board of Trustees, objected to the reference to Beth Din and sought and was granted leave to appeal. Although we now consider that leave to appeal was improvidently granted, we consider the matter on the merits rather than dismiss the appeal on procedural grounds.
We note preliminarily that a factual dispute has been raised as to whether or not the trustees of plaintiff were replaced as *593 such at a meeting of the congregation called in accordance with the EHC bylaws and procedures, by other members of the congregation who were more favorably disposed towards Rabbi Fishman. We need not concern ourselves here with that aspect of the dispute. What is clear from the record is that there is a grievous and unfortunate factional dispute within the congregation of EHC which has raised questions about who properly speaks for EHC and its congregation.
Plaintiff contends that EHC is a nonorthodox congregation established to respect the tenets of "traditional" Judaism. It argues that it is autonomous and wholly independent of other Jewish synagogues or groups and is responsible to no higher ecclesiastical authority. As such, it argues that the resolution of this case should be based simply on modern principles of contract and corporation law through an interpretation of the contract signed by EHC with defendant Rabbi Fishman, and the EHC constitution and bylaws.
Plaintiff also contends that it is not part of any hierarchical structure and has not consented to be bound by the determinations of any higher religious organization. Hence it argues, because there are no religious issues involved, a civil court may decide the dispute between the parties and the constitutional bar of interference with religious matters does not apply. See Serbian Orthodox Diocese v. Milivojevich, 426 U.S. 696, 708-709, 96 S.Ct. 2372, 2380, 49 L.Ed.2d 151, 162 (1976); Watson v. Jones, 13 Wall. 679, 20 L.Ed. 666 (1872); Protestant Episcopal Church, Diocese of N.J. v. Graves, 83 N.J. 572, 576 (1980), cert. den. sub. nom. Moore v. Protestant Episcopal Church, 449 U.S. 1131, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981). But see Chavis v. Rowe, 93 N.J. 103, 105 (1983).
Defendants argue that the "Code of Jewish Law"[2] governs and makes questions regarding the term of office and tenure of *594 an ordained rabbi subject to the exclusive province of the ecclesiastical courts of the Jewish religion.
The First Amendment to the United States Constitution circumscribes the role that civil courts play in resolving church property and doctrinal disputes. Jones v. Wolf, 443 U.S. 595, 602, 99 S.Ct. 3020, 3024, 61 L.Ed.2d 775, 784 (1979); Presbyterian Church v. Hull Church, 393 U.S. 440, 449, 89 S.Ct. 601, 606, 21 L.Ed.2d 658, 665-666 (1969); Chavis v. Rowe, supra, 93 N.J. at 107-108. We do not resolve disputes over church property or administration on the basis of religious doctrine and practice.
Courts do not necessarily refrain from jurisdiction in every case where a church or synagogue and its ministers, rabbis or congregation may be involved in a dispute, because not every application to the court involves protected First Amendment rights or values. See Presbyterian Church v. Hull Church, supra, 393 U.S. at 449, 89 S.Ct. at 606. In a strictly congregational situation, where the congregation owes no fealty or obligation to a higher ecclesiastical authority in matters of church government, courts are not necessarily precluded from resolving civil disputes, provided a justiceable controversy is presented. Watson v. Jones, supra (13 Wall at 722-723); Protestant Episcopal Church v. Graves, supra, 83 N.J. at 580. A court need not and should not interfere in matters of faith, dogma and polity even in a congregational religious organization. Chavis v. Rowe, supra, 93 N.J. at 103.
Defendants have argued that the "Code of Jewish Law" applies to all Jewish congregations and that matters regarding the status of a rabbi and the performance of his duties as such are for determination in accordance with Jewish Law and Rabbinical Law. We have not been furnished with any authenticated copies and translations of the relevant provisions of this Law. However, we have been directed to the case of Zimbler v. Felber, 111 Misc.2d 867, 874-877, 445 N.Y.S.2d 366, 371-372 (Sup.Ct. 1981), which discusses authority referring to rabbinic *595 tenure as a "divinely bestowed prerogative which cannot be waived by a term or option clause." Ibid. Zimbler also discussed interpretations of Jewish law to the effect that once a rabbi has been given a "post" with a congregation, he is not obligated to leave or relinquish that post even if his contract expires unless removed by a qualified Beth Din. 445 N.Y.S.2d at 372. It is not for this court to determine whether such a concept applies to all Jewish congregations, or more importantly, to orthodox versus nonorthodox congregations. We recognize that in Zimbler v. Felber, supra the court proceeded to resolve the case by applying "neutral principles of law" and ordering the congregation to sign a contract with its rabbi, but only because both factions of the synagogue adamantly requested the Court to resolve their dispute. Ibid.
We do not find the case of Jewish Center of Sussex County v. Whale, 86 N.J. 619 (1981), where the dispute was resolved by utilization of fraud and contract principles, to be controlling. Issues of religious doctrine and polity were not there presented, and no one asked for submission of the matter to Beth Din. In that case the rabbi had failed to disclose to the congregation when he signed his original contract that he had a prior criminal record and had been disbarred from the practice of law in New York state. Our Supreme Court affirmed the recision of the contract "on the narrower ground of fraudulent misrepresentation" (Id. at 622) in light of the "unique moral and spiritual relationship" between a congregation and its rabbi and the "qualitative nature of the services that defendant was hired to render...." Id. at 626-627.
Although determination of a religious organization's structure involves questions of fact, courts refrain from inquiry into religious doctrines and usage. See Antioch Temple, Inc. v. Parekh, 383 Mass. 854, 422 N.E.2d 1337, 1342-1343 (1981). In our view, the authority to engage in such inquiry is questionable at best. Our Supreme Court concluded in Chavis v. Rowe, supra, 93 N.J. 111-112, that the only way to determine whether *596 a congregational deacon had been properly removed from his post would require an inquiry beyond the bylaws and constitution of the individual congregation to "study the purpose and philosophy of the congregational structure in general and of disciplining congregational deacons in particular." Such an inquiry was clearly beyond the realm of a civil court. The same situation exists here.
Many factual issues have been raised by the record, including the question of who are the duly constituted Board of Trustees and officers of EHC; whether EHC is an orthodox or nonorthodox synagogue; and the status and jurisdiction of the Beth Din. Obviously, the existence of disputed facts and the need for a resolution thereof would preclude any resolution on the record before us without a plenary hearing. Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234-235 (1973). However, the question is whether those disputed factual matters may be resolved without determining questions of a religious nature. A review of the allegations of the complaint and the nature of the dispute convinces us that such a determination cannot be made without inquiry into religious tenets and polity; that the civil courts are an inappropriate forum to resolve such issues; and that the religious issues must be resolved first before the resolution by a civil court of any remaining issues of a purely civil nature, if any such issues then exist, regarding the "tenure" of Rabbi Fishman and his relationship to EHC and its congregation. This is because Rabbi Fishman's arrangements with EHC are intimately tied to questions of religious doctrine.
Our analysis of the pleadings and the record satisfies us that religious questions permeate all of the issues in this case and relate to interpretations of the concept of rabbinic tenure. It is clear from the face of the complaint that the religious dispute is inseparably intertwined in the allegations of the complaint, particularly when it asserts: failure to fulfill the duties of a rabbi to the congregation; whether there were misstatements in the presence of the Torahs in the EHC sanctuary; lack of judgment required of a spiritual leader of EHC; causing division *597 and dissension within the congregation; being unacceptable as the congregation's spiritual leader, disruption of religious services and preventing the servicing of the religious needs of the congregation. Indeed, many of the other claims depend on defendant Fishman's status as the rabbi of EHC, such as what happened with respect to the final version of his employment contract, his control over congregation funds and activities, and his relationship with the particular Board of Trustees which instituted this suit. The religious overtones are pervasive and all encompassing in this case. Abstention by the Chancery Division from the religious aspects of the dispute was entirely warranted.
We also conclude that Judge Kentz properly denied injunctive relief to plaintiff. Indeed, the requirements for injunctive relief set forth in the polestar decision of Citizens Coach Co. v. Camden Horse Railroad Co., 29 N.J. Eq. 299 (E. & A. 1878), were not satisfied: numerous factual disputes existed which mitigated against any injunctive relief; there was uncertainty in the law; uncertainty as to whether plaintiff would likely prevail, and a question of whether irreparable harm existed. Judge Kentz endeavored to maintain the status quo ante as it existed prior to the purported firing of the rabbi.
We affirm Judge Kentz's determination, and we remand for further proceedings in accordance with his order, including the initial reference to Beth Din, even if we interpret that reference as a suggestion. Although there may be inherent difficulty in a civil court enforcing such a reference or enforcing any action by the Beth Din, EHC assumes any risk inherent in not complying. The Chancery Judge, while retaining jurisdiction to resolve thereafter any matters of a purely civil nature, apparently declined to entertain EHC's complaint unless and until the Beth Din process was accomplished. We also vacate injunctive orders heretofore issued by other parts of this court which precluded Rabbi Fishman from returning to the pulpit of EHC pending this appeal, subject to the following observation. However, *598 at oral argument, Rabbi Fishman represented to us that in view of the nature of the dispute and the pendency of the matter before the Beth Din he would voluntarily refrain from undertaking to resume the pulpit at EHC and seeking back pay unless and until he receives a favorable decision from the Beth Din. Under these circumstances the court refrains from taking judicial action that is unnecessary because a course of action has been voluntarily undertaken. Hall v. Alampi, 47 N.J. 60, 63-64 (1966).
The decision of the Chancery Division is affirmed, subject to the foregoing.
NOTES
[1] The caption of the complaint recites that it is a "Verified Complaint" but the record submitted to us contains no verification and a check with the Clerk of the Superior Court confirms that the filed complaint is not verified.
[2] For discussion of "Halakhic (Jewish Law) concept of tenure," see Zimbler v. Felber, 111 Misc.2d 867, 874-875, 445 N.Y.S.2d 366, 371 (Sup.Ct. 1981).