217 N.J. Super. 85 (1987)
524 A.2d 1298
REVEREND EDWARD B. HARDWICK, ET AL., PLAINTIFFS-APPELLANTS,
v.
FIRST BAPTIST CHURCH OF PERTH AMBOY, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 1, 1987.
Decided April 24, 1987.
*86 Before Judges DREIER, SHEBELL and STERN.
Jose M. Cameron argued the cause for appellants (Spevack & Cameron, attorneys; Jose M. Cameron, on the brief).
*87 James B. Smith argued the cause for respondents (James B. Smith, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Plaintiffs appeal from the dismissal of their complaint by the Chancery Division. Plaintiffs, with the exception of Reverend Edward B. Hardwick, who was defendant's former minister, are the Pastor, Raul A. Ruiz, and members of a Spanish-speaking congregation which is either affiliated with (as claimed by plaintiffs) or a part of (as defendants claim) defendant, First Baptist Church of Perth Amboy. Plaintiffs claim that they have been wrongfully expelled as members of the defendant church, while defendant asserts that plaintiffs have been rightfully denied membership in accordance with the tenets of its church.
The history of defendant's relationship with the Hispanic community commences in 1970 when the First Baptist Church started a "mission" to the Hispanic community of Perth Amboy. The "mission" included the creation of a Hispanic congregation within the church and the commencement of worship services in Spanish at the church. As the Spanish-speaking congregation gradually gained members, it began to use the church facilities for activities in addition to the regular Sunday worship services. By April 1979, 21 members of the Hispanic congregation were listed on the membership roll of the First Baptist Church. Plaintiffs claim that there were and are additional such members who inadvertently were not carried on the rolls. Defendant contends, however, that its former pastor, Reverend Hardwick, merely directed the clerk of the church to enter the individuals as members, and neglected to comply with the by-laws of the church requiring that membership first be passed upon by the deacons of the church and then placed before the membership for a vote. There appears to be no question that the by-laws do so provide, but plaintiffs contend *88 that this provision had long fallen into disuse, and, in fact, has not been applied to many of defendant's English speaking members.
Defendant additionally asserts that in April, 1979 the Hispanic congregation formed its own separate Baptist Church, The Primera Iglesia Bautista Hispana, and that upon the formation of this church, the 21 members of the Hispanic congregation were deleted from defendant's rolls and noted as having transferred to the newly-formed church. Plaintiffs dispute this allegation. They contend that despite an earlier abortive attempt to form a new church, that process never came to fruition, and that for the years following the attempt they have been active members in good standing of defendant church and remain so to the present time. In fact, two of their number have served as defendant's trustees. Finally, plaintiffs claim that at a special business meeting of defendant on June 12, 1983 all the Hispanic members present were asked to leave the room at which time the English-speaking members "declared the Hispanic members to be non-members." A few months later defendant gave the Spanish congregation 30-days notice of eviction.
At oral argument we were informed that the parties have achieved a compromise in that they now share the use of the facilities, but defendant still maintains that plaintiffs are non-members of the church. Additionally, defendant has recently, by a vote of its then-recognized members, merged with another church, thereby augmenting its present membership[1].
This case has spanned the tenures of four Chancery judges, and each has attempted to resolve the issues by accommodating *89 the needs of both sides. The original complaint listed the American Baptist Churches of New Jersey, Inc. and the Raritan Cluster of the American Baptist Church in New Jersey as defendants and requested the additional relief of having plaintiffs submit the issue of their membership to these entities "for final and binding resolution." Since defendant denied the authority of these organizations, this relief was denied and the complaint dismissed as to them[2].
One attempt to resolve this impasse was to have plaintiffs apply anew for membership in the church, have the church set forth reasons for any denial of membership in writing and report the results to the court, with plaintiffs and others of similar standing given leave to use the church premises for worship pending resolution of the case. Most of the plaintiffs submitted such applications and one by one were in the process of being examined by the deacons as to their theological views. When the process became attenuated, it was agreed that the applications themselves could be reviewed without personal examinations. Yet plaintiffs disavowed this process and determined to rest upon their position that they were already members of the church and need not reapply for membership. By then the case had been dismissed without prejudice pursuant to a Stipulation and Order of Dismissal with the understanding that either side could move to restore the matter if their differences had not been settled by April 1, 1986. One day prior to this deadline, plaintiffs filed a notice of motion to restore the case and both sides again filed cross-motions for summary judgment.
*90 The trial judge based his dismissal on two grounds: first, that there was no case or controversy before the court; and, second, that the court lacked subject matter jurisdiction, since the case turned on a question of religious doctrine. We disagree with the trial judge on both points.
On the issue of the absence of a current controversy, plaintiffs' failure to apply (or reapply) for membership, defeated a court-initiated attempt to resolve the issue. However, compliance with this procedure was not a prerequisite for plaintiffs' pressing their cause of action. The court in no way ordered this solution as an exclusive means of redressing plaintiffs' asserted complaints. Rather, the suggestion was merely a proposed settlement to resolve the very issue before the court. Despite plaintiffs' failure to proceed as suggested by the court, and despite the resolution of the issue of their access to the church premises, an issue still remained before the court; specifically, whether plaintiffs were, in fact, members of the church and thereby permitted to vote with other members of the congregation. Therefore, contrary to the conclusion of the trial judge, there was a controversy still before the court.
Plaintiffs asserted that the question of jurisdiction could not be again raised before the current Chancery judge, since it had been resolved earlier in their favor by one of his predecessors. The issues of res judicata, collateral estoppel and even law of the case, as urged by defendants, are here inapplicable, since this was not a matter raised in a new proceeding nor on remand or retrial of the original proceeding. See State v. Reldan, 100 N.J. 187 (1985); State v. Hale, 127 N.J. Super. 407 (App.Div. 1974). A decision at one phase of the litigation is always subject to revision if the facts and circumstances at a later phase warrants such action. State v. Reldan, supra, 100 N.J. at 204 There is no requirement that a court perpetuate a mistaken ruling simply because the ruling was made at an earlier phase of the litigation or by another judge. This principle *91 is recognized in R. 4:42-2 even in a situation where there has been adjudication of one of two related claims. The rule provides that in the absence of a proper direction or determination that there has been a complete adjudication of a separable claim or the rights of a party
... any order or other form of decision, however designated, which adjudicates less than all the claims ... is subject to revision at any time before the entry of judgment adjudicating all the claims.
Moreover, the question of lack of jurisdiction over the subject matter may be made by motion at any time. R. 4:6-2, 4:6-3, 4:6-7. The motion for dismissal for lack of jurisdiction, therefore, was properly before the trial judge.
On the merits of the jurisdiction issue, however, the question of church membership is not one that is removed from the jurisdiction of the civil courts, Baugh v. Thomas, 56 N.J. 203, 208 (1970), even though the courts may not determine ecclesiastical issues, Chavis v. Rowe, 93 N.J. 103, 109-110 (1983). The court in Chavis distinguished between the adjudication of the rights of church membership as in Baugh and the claims of plaintiff in Chavis to a position of deacon within the Baptist church. The Chavis Court stated:
That Baugh would permit a court to examine whether the `established procedures of a religious organization, as proved, have been followed.' 56 N.J. at 208 (emphasis supplied), does not suggest that a civil court may dissect the constitution and by-laws of Calvery or the religious writings of the Baptist Church....
In Baugh this Court admonished a church to follow an established procedure relating to a ministerial process (tallying votes), whereas in this case plaintiff would have us perform a task better left to exegetes. The procedure for removing a deacon is ambiguous. That ambiguity would be properly resolved only by going beyond the by-laws and the constitution of Calvary to a study of the purpose and philosophy of congregational structure in general and of disciplining congregational deacons in particular. .. . Such hermeneutics are beyond this Court's realm. [93 N.J. at 111-112; emphasis supplied].
The issues of the case before us fall into a gap between the principles of Chavis v. Rowe and Baugh v. Thomas. In Baugh the Court stated that the
loss of the opportunity to worship in familiar surroundings is a valuable right which deserves the protection of the law. [56 N.J. at 208].
*92 In Chavis, quoting this principle, the Court described the Baugh holding to be "that membership in a church would be judicially protected from unjust interference." (93 N.J. at 110). In Chavis the Court further noted that
... Insinuation by civil courts into the customs and usages of the by-laws and the constitution, into the administration and the policy of the church in the hope of uncovering clues to the correct disciplinary procedures, threatens the freedom of religious institutions from secular entanglement. [93 N.J. at 112].
Yet if the issue is not resolved by the courts, what may have been a minority of the church membership could, by requesting the majority to leave the room, have appropriated the church, its property, and the right to designate future members by a rump vote subject to no civil or ecclesiastical appeal.
Although the church is a religious institution and entitled to protection from civil interference, it is also a religious corporation whose members are entitled to rights afforded by statute. See N.J.S.A. 16:1-1 et seq. as to religious corporations in general, and N.J.S.A. 16:2-1 et seq. as to Baptist Churches in particular. As stated in Baugh v. Thomas, a Baptist Church
is an independent self-governing body whose affairs are administered by the membership acting together, and whose will is expressed by a majority vote of its members. [56 N.J. at 209].
Under Baugh v. Thomas there is no impediment to a court's determining whether an individual is a member of the a church; but under Chavis v. Rowe courts must refrain from adjudicating on theological grounds whether such individuals should be a member. We, therefore, will not direct the Chancery Division to review any proceedings in which a member might be rejected on theological grounds. But there is no bar to the court's reviewing the factual issue of whether particular members had already been accepted by the church and have now been arbitrarily excluded.
However, it is possible that adjudicating whether a member had been accepted might implicate doctrinal issues. It is inappropriate for the court to insinuate itself into such an adjudication, *93 even to the extent of determining where the parties without agreement must turn to resolve that issue. But see Elmora Hebrew Center Inc. v. Fishman, supra. Here, as in Elmora Hebrew Center Inc., defendant has contended that the organized bodies to which plaintiffs wished to have the doctrinal disputes referred are simply not recognized by it. It would be a direct violation of the separation of Church and State mandated by the Federal and State constitutions and the Chavis decision to require such participation over the church's objection. U.S. Const. Amend. I; N.J. Const. (1947), Art. I, par. 3. Since no hierarchical structure exists in the Baptist Church, we would appear to be at an impasse in guiding the trial judge as to how he might resolve any doctrinal aspect of the membership dispute.
Yet a solution has been suggested that might well be acceptable to both litigants, i.e., a form of expert arbitration of the issue. If each side chooses a Baptist minister or professor of the same sect whose religious authority is respected by the party, and these two experts in turn can agree upon a third member, similarly respected by both initial experts, each party will thus have had a hand in choosing a majority of the three-person panel. Then if questions such as whether deacons are doctrinally required to pass upon membership preliminary to a congregational vote, or whether a minister may alternatively admit a parishioner to membership under the tenets of the Baptist Church, are found to be threshold questions precluding adjudication of plaintiffs' rights, this panel can resolve that issue and notify the court of the principle to be applied. At oral argument both parties agreed to consider this proposal to resolve the religious aspects of their dispute. Such resolution would leave the trial court solely vested with plaintiffs' temporal claims, a matter well within its jurisdiction. As noted in Baugh v. Thomas:
We cannot, however, accept the proposition that civil courts lack jurisdiction to determine whether established procedures of a religious organization, as *94 proved, have been followed where a member is expelled from that organization. Earlier decisions of this state which reject such jurisdiction are overruled.
* * * * * * * *
Moreover, except in cases involving religious doctrine, we can see no reason for treating religious organizations differently from other non-profit voluntary associations. In the context of other voluntary associations, we have held that there need not be a property right at stake for a court to assume jurisdiction. The status of membership in a voluntary association is sufficient to warrant at least limited judicial examination of the reason for expulsion. [56 N.J. at 208].
If the parties cannot resolve this procedural problem, the court must unavoidably determine the necessary issues before it, after an appropriate adversary proceeding. The court would then be forced to determine the religious issues as factual matters established by lay testimony and expert proof concerning the practices and doctrine of the congregation. We reiterate, however, that the principle of abstention in such matters renders this choice a poor substitute for the non-judicial resolution of any religious issues in the case. Without abandoning the Chavis principles, we find that there must be a resolution of the corporate rights of the parties, namely the membership question which may in turn determine which side truly controls the Church. Defendants' attempt to thwart plaintiffs' membership claims on doctrinal grounds cannot control when plaintiffs' claims of membership can turn on similar doctrinal questions.
Lastly, defendants allege that some or all of the plaintiffs are no longer actively pursuing their applications and, therefore, dismissals are warranted. It is evident to us by the prosecution of this appeal that adjudication of membership rights is still actively pursued by at least one or more of the plaintiffs. On remand, the court of necessity will inquire as to which of the plaintiffs still pursues a claim of membership, and such claims should be adjudicated within the general guidelines expressed in this opinion.
The judgment dismissing the complaint is reversed, and this matter is remanded to the Chancery Division for further proceedings in accordance with this opinion.
NOTES
[1] Plaintiffs contend that this merger may be challenged, although that issue is not directly before us, since they were excluded from voting on this issue. Due to attrition of the English-speaking membership, plaintiffs' numbers at least equaled, if not exceeded, those of their English speaking brethren before the merger. The resolution of any issues concerning the merger, however, must await a later day.
[2] We note a recent decision apparently to the contrary. In Elmora Hebrew Center Inc. v. Fishman, 215 N.J. Super. 589 (App.Div. 1987), another part of this Court required arbitration by an ecclesiastical forum chosen by the trial court, but unacceptable to and unrecognized by the congregation. (215 N.J. Super. at 597-98). While we agree that religious issues are beyond the purview of the civil courts, we decline, as noted infra, to direct reference of the matter to any ecclesiastical authority not recognized by both parties because that would assume resolution of the very doctrinal issue in dispute.