No. 65,418

ARTHUR C. KENNEDY, DONALD L. DAVIS, VENTROLA PURNELL, RUSSELL FEARS, ULYSES PRINCE, ALLEN WHITE, DOROTHY O. MOUTON, CECIL D. JOHNSON, NORA FAVORS, ROSE M. JOHNSON, WILLIE S. ROBERTSON, and LILLIAN HARRINGTON, *Appellants*, v. DAVID L. GRAY, HENRY J. PARKER, CUNNIE RANDLE, HAROLD HOLMES, WOODROW McCOY, CECILIA ALEXANDER, VICKIE DEWICK, and ETHEL DAVIS, *Appellees*.

(807 P.2d 670)

Opinion filed March 15, 1991.

*David R. Nachman,* of Brown & Thiessen, P.C., of Kansas City, Missouri, argued the cause, and *Thomas C. Brown* and *Gregory M. Garvin,* of the same firm, and *Eldon J. Shields,* of Gates & Clyde, Chartered, of Overland Park, were with him on the briefs for appellants.

*John J. Jurcyk, Jr.,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, argued the cause, and *Daniel F. Church,* of the same firm, was with him on the brief for appellees.

*Michael K. Whitehead,* general counsel, of Christian Life Commission, of Washington, D.C., and *Timothy R. Brownlee,* of Shawnee, were on the brief for *amicus curiae* The Christian Life Commission of the Southern Baptist Convention.

The opinion of the court was delivered by

ABBOTT, J.: The trial court granted summary judgment in favor of the defendants and against the plaintiffs in a suit for an accounting of the financial affairs of an unincorporated, independent congregational church.

The trial court dismissed the suit because the plaintiffs, after the suit was filed, were expelled from membership in the church;

and the trial court concluded they no longer had standing to maintain the suit. The trial court held it could not inquire into the regularity of the expulsion because it was an "ecclesiastical" action by a religious body. This appeal followed, and the issue is whether the trial court erred by holding that the First Amendment to the Constitution of the United States and Section 7 of the Bill of Rights to the Constitution of the State of Kansas prohibit a court from hearing this case.

The twelve plaintiffs in this case were members, and still claim to be members, of Pleasant Green Baptist Church (Church). The Church was started in 1914, when several families moved to Kansas from Mississippi, where they had been members of the Pleasant Green Baptist Church. When they started a church in their new home, they gave it the same name. One of the plaintiffs, Lillian Harrington, was a member of one of those families and has been a church member since the church was founded (76 years). The other plaintiffs have been members ranging from six years to fifty years. The twelve members have an average length of membership in the Church of over 31 years. Six of them were deacons of the Church and the twelve have served the Church in many capacities, ranging from church clerk and Sunday school teacher to usher.

The eight defendants include the Church pastor, the chairman and co-chairman of the deacon board, the chairman of the trustee board, persons with signature authority on the Church's bank accounts, and other members of the Church who control and/or hold title to assets and property for the benefit of the Church and its members. The pastor, David L. Gray, has held that position for thirty years.

Plaintiffs attempted to gain access to information regarding the Church's financial affairs and the use of Church assets and property. They ultimately filed a class action suit on behalf of all members of the Church for both an accounting and for the appointment of a temporary receiver to perform the accounting. Plaintiffs were unsuccessful in obtaining the information they sought through the use of interrogatories, requests for admissions, and requests for production of documents.

Defendants filed their first motion for summary judgment (not the subject of this appeal) in October 1989. Defendants alleged

that plaintiffs were expelled as members of the Church at a church meeting on July 30, 1989, the first Sunday after this suit was filed. On January 5, 1990, the trial court denied defendants' motion, stating that there were controverted material issues of fact as to whether there had been any expulsion hearing.

Within two weeks after defendants' first motion for summary judgment was denied, defendants filed their second motion for summary judgment (the subject of this appeal). Defendants, on the second motion for summary judgment, alleged that plaintiffs had been expelled as members of the Church on January 14, 1990, after the regular church service that day.

After defendants filed their second motion for summary judgment, plaintiffs attempted to discover whether Church rules existed regarding expulsion and membership and whether those persons "voting" were members of the Church. Plaintiffs also attempted to discover the existence of any membership list and the names of those persons voting at the alleged expulsion. To that end, plaintiffs served upon defendants additional written discovery requests.

Defendants filed a motion to quash plaintiffs' second discovery request. Defendants noted that the discovery requests all concerned the procedure used to expel the defendants, presuming that procedural due process was due the defendants. Defendants argued that plaintiffs had no right to question the expulsion. The trial court required plaintiffs to respond to defendants' motion for summary judgment without further discovery.

In defendants' second motion for summary judgment, they contended that, at a regular church service, the pastor proposed expelling the plaintiffs because filing suit against the Church was "anti-Bible." Defendants asserted that the motion passed. They argued that courts are without jurisdiction to intervene in church matters and any action taken by the Church cannot be questioned in court. Defendants included affidavits from the pastor stating that the expulsion had occurred, along with a letter to the former members informing them of their expulsion. Defendants also included affidavits of several church members to the effect that such vote was taken. Defendants also filed minutes of the meeting, showing that the vote was taken.

Plaintiffs filed an affidavit of a pastor at another Baptist church, who said that all Baptist churches subscribed to certain rules, including the rule that members must be given notice and an opportunity to answer before any expulsion. Plaintiffs filed affidavits of the expelled members, stating that they had not been given prior notice of expulsion or opportunities to be heard. Many of the plaintiffs' affidavits stated that there are written and unwritten bylaws or procedures of the Church which direct how members may be expelled and that the member who is a target for expulsion is entitled to notice and an opportunity to be heard. Various plaintiffs stated there had never been an expulsion from membership during the years they were members. (Their years of membership ranged from twenty to fifty years.) All of the plaintiffs denied they had knowledge or notice of the expulsion attempt and thus had no opportunity to be heard.

The trial court found that it was uncontroverted that the January 14 meeting and expulsion had taken place, and the court concluded that it had no power to inquire into the procedure used. The court granted summary judgment for defendants, and this appeal followed.

Plaintiffs make numerous arguments, but the arguments are interrelated. They argue that summary judgment was improper because there were controverted material facts in dispute and because discovery was not complete. They also argue that, because the Church was a congregational church with no rules or formal structure, rather than a hierarchical church, notice and a hearing were due prior to expulsion.

It is the general rule that summary judgment should rarely be granted as long as pretrial discovery remains incomplete. *Timmermeyer v. Brack*, 196 Kan. 481, 412 P.2d 984 (1966). Here, the effect of the trial court's ruling was to quash plaintiffs' discovery request. Plaintiffs were seeking information, most of which would be relevant only if they had a right to notice and a hearing prior to expulsion. The holding of the trial court was, in effect, that as long as there was an expulsion meeting, there was *nothing* that plaintiffs could show to prevent summary judgment in defendants' favor because the trial court would not consider the procedure used at the meeting.

The trial court relied on *King v. Smith*, 106 Kan. 624, 189 Pac. 147 (1920), in holding that a court cannot review a church's expulsion of a member. In *King*, a schism had developed in a local church. Certain members were expelled. The expelled members sued to enjoin the other members from holding services in the building. The trial court held that there were irregularities at the expulsion meeting, declared the pastor's position and all other offices vacated, and appointed a receiver to call a meeting and hold a vote to elect a pastor and officers.

On appeal, the defendants argued that these matters—such as who is pastor and who and how someone is expelled—are all matters to be settled by the church tribunals, not by the court. This court held:

"The differences and disputes that had arisen in the church were mostly questions for the determination of its own tribunals. Property rights were not the questions that divided the parties.

. . . .

"The church has its own tribunal and its own rules and procedure for the determination of its internal affairs, and their decision in controversies as to the discipline and expulsion of members and the dissolution of the pastoral relation, where no civil or property right is involved, is ordinarily binding upon civil courts." *King v. Smith*, 106 Kan. at 625-26.

In *King v. Smith*, this court stated that the disputed issues were such that "full provision is made for the settlement of such controversies by the law and usages of the church." 106 Kan. at 626. Expulsion of a member was specifically covered in writing by a Standard Manual, accepted by the church. The court added:

"Of course, the decisions of church tribunals are not conclusive on the courts where property or civil rights or the perversion of a trust are involved, but cases of discipline and expulsion of a member are to be determined by the judicatories of the church." 106 Kan. at 627.

The briefs filed in *King* are of interest. The appeal was brought by the Reverend B. Alard Smith and his wife. Reverend Smith (pastor) and his wife (church secretary) had been voted out of office at a meeting called by the three appellees. This meeting was held after the lawsuit was filed. The Smiths listed and briefed as the issue in the case the question whether one or more members of a church, who became dissatisfied with a pastor, can file

a lawsuit to remove the pastor from office, without resorting to the means of removal provided for by the church.

One of the plaintiffs, J. S. Nuckols, had been excluded from membership, but his exclusion was not an issue in the case. In fact, it appears Nuckols had ignored the expulsion and was a leader in the effort to topple the Smiths. The church had had a troubled past. A pastor had been killed by a member, and Nuckols had flogged Smith's predecessor with a whip at a church meeting. The end result in *King v. Smith* was that the Smiths were restored (as were all the other officers) to their former positions and the receivership and injunction dissolved. The holding of *King*, therefore, is simply that disgruntled church members may not bypass church procedures to contest decisions with which they are not pleased. *King* does not stand for the proposition that courts may not question whether members were given their procedural rights.

Defendants admit that courts do have the power to determine who owns church property. In *Gospel Tabernacle Body of Christ Church v. Peace Publishers & Co.*, 211 Kan. 420, 506 P.2d 1135, *reh. denied* 211 Kan. 927, 508 P.2d 842 (1973), this court considered whether a board of trustees had authority to convey church property absent approval of members of the congregation. Here, defendants argue that plaintiffs have not stated a property interest. They argue that the only question is whether the members were properly expelled.

Plaintiffs characterize the argument differently. They argue the question is whether they are entitled to procedural due process in an expulsion when the expulsion denies them a property interest. They claim a property interest in that they show they have contributed to the Church (some of them substantially for many years) and that if the Church dissolved they would be entitled to a share of the church assets.

In *Serbian Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 49 L. Ed. 2d 151, 96 S. Ct. 2372, *reh. denied* 429 U.S. 873 (1976), a battle for control developed in the Serbian Eastern Orthodox Diocese of the United States and Canada. The Holy Synod of the Serbian Orthodox Church (Mother Church) defrocked a bishop who then filed suit in the Illinois courts to have himself declared the true bishop and to enjoin the newly ap-

pointed bishop from interfering with diocesan assets. He argued that the procedure followed by the Holy Assembly of Bishops and the Mother Church was procedurally and substantively defective under the internal regulations of the Mother Church.

The United States Supreme Court recognized that the church was a "hierarchical church," 426 U.S. at 708, with a governing body, set rules of procedure, and an internal appeals procedure. The Court held that the basic dispute was over control of a diocese and its property and assets, and an inquiry into the procedure followed by a hierarchical church to settle that dispute would necessarily involve an inquiry into the beliefs of the church. The Court said:

"[W]here resolution of the disputes cannot be made without extensive inquiry by civil courts into religious law and polity, the First and Fourteenth Amendments mandate that civil courts shall not disturb the decisions of the highest ecclesiastical tribunal within a church of hierarchical polity, but must accept such decisions as binding on them, in their application to the religious issues of doctrine or polity before them." 426 U.S. at 709.

There was no dispute as to notice and an opportunity to be heard and the issue was determined to be not a property dispute, but property litigation that turns on the resolution of controversies over religious doctrine and practices.

In summary, the court in *Milivojevich* stated:

"In short, the First and Fourteenth Amendments permit hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters. When this choice is exercised and ecclesiastical tribunals are created to decide disputes over the government and direction of subordinate bodies, the Constitution requires that civil courts accept their decisions as binding upon them." 426 U.S. at 725.

Plaintiffs argue that different rules apply to "congregational" churches; that is, churches in which the congregation makes all decisions by a majority vote.

One analogy that can be made is to voluntary, unincorporated associations. In *Harris v. Aiken*, 76 Kan. 516, 92 Pac. 537 (1907), this court held that a member of a voluntary association may be expelled if he was given notice of the charges and an opportunity to defend himself. See also *Wichita Council v. Security Benefit Ass'n*, 138 Kan. 841, 29 P.2d 976 (1934) (mutual benefit society).

These cases give members rudimentary due process rights because a member has some equitable property rights in the assets of the association.

Other states have extended this rule to congregational churches. In *Reid v. Gholson*, 229 Va. 179, 327 S.E.2d 107, *cert. denied* 474 U.S. 824 (1985), the Virginia Supreme Court explained that hierarchical churches have their own established rules for discipline and internal government. The court noted that these tribunals are frequently inherently tied to and based on ecclesiastical law developed over long periods of time. The court, relying on *Serbian Eastern Orthodox Diocese*, said that to delve into the decisionmaking processes of these bodies would entangle a court into the "religious thicket." 229 Va. at 187.

The court defined congregational churches, which are governed by the will of the majority. It said:

"They are free to adopt constitutions, by-laws, and internal rules which will alter or regulate their proceedings, but even these must be enacted by majority vote. And in the absence of such voluntarily-adopted rules, each such congregation functions as a pure democracy. When the majority has spoken in a fairly-conducted congregational meeting held after proper notice to the membership, then the governing body of the church has expressed its will and, as in the case of an hierarchical church, its decision is constitutionally immune from judicial review.

"The situation is otherwise, however, when the members of a congregational church merely seek the protection of the court for the purpose of obtaining a fairly-conducted meeting in the first place. Here the analogy to hierarchical churches breaks down because there is no body of ecclesiastical law to invoke, no internal tribunal to appeal to. A member of a congregational church, seeking the aid of the court in protecting his civil and property rights, may appeal only to the simple and fundamental principles of democratic government which are universally accepted in our society. These principles include the right to reasonable notice, the right to attend and advocate one's views, and the right to an honest count of the votes. Such rights are fundamental to our notions of due process. They are neutral principles of law, applicable not only to religious bodies, but to public and private lay organizations and to civil governments as well. Courts must apply them every day, and can do so without any danger of entering a 'religious thicket.' Therefore, the authorities which preclude the courts from examining whether an hierarchical church correctly followed its own internal procedures, or correctly applied its canon law, are inapposite to the question before us." 229 Va. at 189-90.

Other courts reach similar results. See, *e.g.*, *Abyssinia Missionary Baptist Ch. v. Nixon*, 340 So.2d 746 (Ala. 1976); *Konkel v. Metropolitan Baptist Church, Inc.*, 117 Ariz. 271, 572 P.2d 99 (1977); *Hardwick v. First Baptist Church*, 217 N.J. Super. 85, 524 A.2d 1298 (1987); *Ex Parte McClain*, 762 S.W.2d 238 (Tex. App. 1988).

Although there are cases to the contrary, the aforementioned line of cases seems to be better reasoned. Such a result is consistent with the law of voluntary associations and is not inconsistent with *King v. Smith*.

In the case presently before us, summary judgment was improper. Disputed facts remain in that plaintiffs presented affidavits that written and unwritten bylaws and procedures exist. An independent witness, an assistant pastor of a church of the same denomination, also filed an affidavit to the same effect and cited as authority *Hiscox Guide for Baptist Churches* by Edward T. Hiscox. (The "Standard Manual" referred to in *King v. Smith* appears to be from New Directory for Baptist Churches, E. T. Hiscox, D.D., ch. 4, pp. 101, 108.)

The trial court erred in failing to determine the factual issue of whether church law or usage existed, requiring notice and an opportunity to be heard. If a congregational church provides a procedure for expulsion of a member, a good faith effort to follow that procedure must be made.

A congregational church member has a right under common-law principles to a fairly conducted meeting on the question of expulsion, and that includes reasonable notice, the right to attend and speak against the proposed action, and the right to an honest count of the vote. In the absence of church law or usage, a majority vote of the members present at a regular Sunday service prevails on expulsion. It does not require formal evidence, the right to counsel, or the right to present witnesses (unless church rules so require).

Reversed and remanded with directions.