William **LACY,** Individually and as Representative of Williams Temple Church of God in Christ, Inc., Appellant

v.

Roland **BASSETT** as Administrative Manager of Williams Temple Church of God in Christ, Inc., Rufus Kyles, Jr., Debra Taylor, Darlynn Taylor, and Williams Temple Church of God in Christ, Inc., Appellees.

No. 14–02–01077–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 30, 2004.

Frederick T. Dietrich, J.W. Beverly, Houston, for appellant.

Brent C. Perry, Jarvis V. Hollingsworth, Patrick Zummo, Chris J. McDaniel, Jon Mark Wagner, Houston, for appellees.

Panel consists of Justices EDELMAN, FROST, and GUZMAN.

1. *See* TEX.REV.CIV. STAT. ANN. art. 1396, §§ 1.01–11.01 (Vernon 2003). All subsequent

## OPINION

EVA M. GUZMAN, Justice.

In this case we are called upon to examine the application of the Texas Non–Profit Corporation Act[1] to a church member's request for access to church financial records. The trial court dismissed William Lacy's suit against the Williams Temple Church of God in Christ, Inc. ("Church"), its bishop, and other church personnel (collectively "appellees") based upon the ecclesiastical doctrine. On appeal, Lacy asserts the trial court erred in concluding the doctrine precluded his request to examine the church's records. We reverse and remand.

## I. FACTS AND PROCEDURAL BACKGROUND

Lacy, a member of the Church, made a written request through his attorney to examine and copy some of the Church's financial records. Lacy made the request pursuant to the Act. Initially, the Church agreed Lacy could examine and copy the requested records; however, prior to the date Lacy was to inspect the records, Rufus Kyles, the Church's bishop, sent Lacy a letter advising him that the Church could not comply with his request. Bishop Kyles's letter stated further, "Your requests to *review* and/or *copy* the 'Documents' is [sic] *denied.*"

Lacy filed a declaratory judgment action against appellees, alleging violations of the Act, breach of fiduciary duties, and breach of the parties' agreement regarding review of the records. Appellees filed a joint motion to dismiss on the basis that the court was without subject matter jurisdiction because the court would be required to "involve itself in matters of ecclesiastical governance." The trial court granted the

references to the "Act" or "statute" are to the Texas Non–Profit Corporation Act.

motion and signed an order dismissing Lacy's claims. This appeal ensued.

## II. Standard of Review

■ The Church's motion to dismiss is the functional equivalent of a plea to the jurisdiction. *Anderson v. City of San Antonio*, 120 S.W.3d 5, 7 (Tex.App.-San Antonio 2003, pet. denied). A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a cause of action. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). Subject matter jurisdiction raises a question of law, which we review de novo. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). In deciding a plea to the jurisdiction, a court must not weigh the claims' merits and should consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002).

■ When considering a trial court's order on a plea to the jurisdiction, we construe the pleadings in the plaintiff's favor and look to the pleader's intent. *Id.* If a plaintiff fails to plead facts establishing jurisdiction, but the petition does not affirmatively negate jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Id.* However, if the pleadings affirmatively demonstrate a lack of jurisdiction, a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.*

## III. Analysis

■ In two issues, Lacy asserts the trial court erred in dismissing his suit for lack of subject matter jurisdiction based upon the "ecclesiastical doctrine."[2] Under the doctrine, the First Amendment forbids courts from inquiring into religious doctrine, beliefs, or principles to resolve disputes over church property, polity, or administration. *See Williams v. Gleason*, 26 S.W.3d 54, 58 (Tex.App.-Houston [14th Dist.] 2000, pet. denied); *Dean v. Alford*, 994 S.W.2d 392, 395 (Tex.App.-Fort Worth 1999, no pet.). Lacy argues that neither his request for a declaratory judgment to determine his statutory rights under the Act nor his contract claim require the court to resolve a dispute involving religious doctrine and practice; therefore, his claims do not implicate the ecclesiastical doctrine.[3] He also contends that if a conflict exists between the Act and the First Amendment, it is a constitutional question, not a jurisdictional issue.

In the trial court, and on appeal, appellees contend that Lacy's claims require the court to involve itself in matters of ecclesiastical governance. Thus, we examine application of the ecclesiastical abstention doctrine to the circumstances of this case.

### A. Ecclesiastical Abstention Doctrine

■ The First Amendment of the United States Constitution, applied to the

---

2. The doctrine is also referred to as the ecclesiastical abstention doctrine. *See, e.g., Williams v. Gleason*, 26 S.W.3d 54, 58 (Tex. App.-Houston [14th Dist.] 2000, pet. denied); Shea Sisk Wellford, Note, *Tort Actions Against Churches—What Protections Does the First Amendment Provide?*, 25 U. Mem. L.Rev. 193, 194 (1994).

3. On appeal, Lacy does not assign any error to the trial court's dismissal of his breach of fiduciary duty claim and, presumably, has abandoned that claim. Therefore, we do not address application of the ecclesiastical abstention doctrine to a breach of fiduciary claim; however, we do note that at least one Texas appellate court has found that such a claim necessitates the court's involvement with religious doctrine, requiring application of the ecclesiastical doctrine. *E.g., Turner v. Church of Jesus Christ of Latter–Day Saints*, 18 S.W.3d 877, 897–98 (Tex.App.-Dallas 2000, pet. denied).

states through the Fourteenth Amendment, provides: "Congress shall make no law respecting an establishment of Religion, or prohibiting the free exercise thereof." U.S. CONST. amends. I, XIV. This provision mandates that government and religion remain separate, forbidding the government from interfering with the rights of hierarchical religious bodies to either establish their own internal rules and regulations or create tribunals for adjudicating disputes over religious matters. *Williams*, 26 S.W.3d at 58; *Tran v. Fiorenza*, 934 S.W.2d 740, 743 (Tex.App.-Houston [1st Dist.] 1996, no writ) (citing *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 708–09, 724–25, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976)).

■ Following this constitutional mandate, under the ecclesiastical abstention doctrine, civil courts may not intrude into the church's governance of religious or ecclesiastical matters, such as theological controversy, church discipline, ecclesiastical government, or the conformity of members to standards of morality. *See Williams*, 26 S.W.3d at 58; *Dean*, 994 S.W.2d at 395; *Tran*, 934 S.W.2d at 743. In addition, courts should not involve themselves in matters relating to the hiring, firing, discipline, or administration of clergy. *McClure v. Salvation Army*, 460 F.2d 553, 558 (5th Cir.1972); *Dean*, 994 S.W.2d at 395; *Tran*, 934 S.W.2d at 743. The relationships between an organized church and its ministers are considered a church's "lifeblood" and matters involving those relationships are recognized as "of prime ecclesiastical concern." *McClure*, 460 F.2d at 558–59; *Dean*, 994 S.W.2d at 395.

■ Nevertheless, acknowledging that churches, their congregations, and hierarchy exist and function within the civil community, they can be as amenable to rules governing civil, contract, or property rights as any other societal entity. *Dean*, 994 S.W.2d at 395 ("[C]ourts do have jurisdiction to review matters involving civil, contract, or property rights even though they stem from a church controversy."); *Tran*, 934 S.W.2d at 743 (citing to *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 732–33, 20 L.Ed. 666 (1871)). Therefore, a state may adopt an approach, including neutral principles of law, for resolving church disputes that do not involve consideration of doctrinal matters. *Hawkins v. Friendship Missionary Baptist Church*, 69 S.W.3d 756, 758–59 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (citing *Jones v. Wolf*, 443 U.S. 595, 604, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979)). Under such an approach, a court may interpret church documents in purely secular terms without relying on religious precepts in resolving the conflict. *Id.* If an issue cannot be determined without resolving a religious controversy, a court must defer to the resolution of the doctrinal issue by the authoritative ecclesiastical body. *Id.* Often, however, the difficulty arises in determining whether a particular dispute is "ecclesiastical" or simply a civil law controversy in which church officials happen to be involved. *Tran*, 934 S.W.2d at 743. To resolve the question, courts must look to the "substance and effect of a plaintiff's complaint to determine its ecclesiastical implication, not its emblemata." *Id.; see also Williams*, 26 S.W.3d at 59 (stating the substance and effect of plaintiff's petition must be examined to determine its "ecclesiastical implication").

In the trial court, Lacy sought an order declaring and enforcing the parties' agreement and declaring their respective rights under the Act.[4] The Act provides that a

4. We do not address the *extent* to which docu-

ments should be made available to Lacy un-

non-profit corporation must keep "correct and complete books and records of account," and a member of that non-profit corporation has the right "on written demand stating the purpose of the demand . . . at any reasonable time, for any proper purpose" to examine and copy those books and records relevant to that purpose, at the member's expense. Tex.Rev.Civ. Stat. Ann. art. 1396–2.23. Lacy asserts that as a non-profit corporation incorporated under the Act, the Church and the other appellees[5] are required to maintain books and to make them available to its members.

■ Appellees argue that the Church's maintenance and disclosure of its financial records is a matter of internal ecclesiastical governance, reasoning that because the bishop decides when disclosure is appropriate, it is an ecclesiastical matter.[6] In support of their argument, appellees cite to *Hawkins v. Friendship Missionary Baptist Church.* In *Hawkins,* this Court examined whether the trial court had subject matter jurisdiction over a dispute involving a church; however, we framed the issue as one involving "an ecclesiastical matter relating to the firing of a minister."[7] 69 S.W.3d at 758. Further, we described the dispute in that case as a *"power struggle* between the Church, Deacons, and Pastor" which could not be resolved based *only on neutral principles of law,* but required "delving into religious doctrine or polity." *Id.* (emphasis added). Here, we are not presented with those types of issues.[8] In the case before us, we are not confronted with issues regarding the Church's relationship with its clergy, nor any consequent power struggle.[9] In-

---

der the Act or the merits of his claims; we merely determine whether the trial court lacked subject matter jurisdiction due to the ecclesiastical abstention doctrine.

5. Roland Bassett is the Church's administrative manager, Debra Taylor its accountant, and Darlynn Taylor its treasurer.

6. The parties do not dispute that the Church is a non-profit corporation, incorporated under Texas law, nor that Lacy is a member of the Church. Also, appellees do not contend that Lacy's request failed to satisfy the constrictions of the Act.

7. In *Hawkins,* the appellees—the church and the chairman of its governing body—sought injunctive relief in the trial court to "prohibit the Deacons . . . from refusing . . . access to Church property and records." 69 S.W.3d at 757. They also argued that a determination of which group had authority to make decisions within the church was a non-ecclesiastical matter. *Id.* However, on appeal there was no issue concerning the statutory right to examine records, but only whether decision-making authority in the church, as between the parties, could be decided under neutral principles of law.

8. The appellees cite to several other cases which they contend support their claim that

Lacy's request to examine the Church's records is solely an ecclesiastical matter. *See, e.g., Milivojevich,* 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (involving the defrocking of a priest); *McClure,* 460 F.2d 553 (determining Title VII did not apply to the Salvation Army but examining the case within context of church and its relationship to its ministers); *Dean,* 994 S.W.2d 392 (addressing issues within context of ouster of pastor); *Mangum v. Swearingen,* 565 S.W.2d 957 (Tex.Civ.App.-San Antonio 1978, writ ref'd n.r.e.) (involving expulsion of deacons and the church's ability to determine its membership). However, in these cases the ouster of deacons or priests was involved, an issue recognized as a purely ecclesiastical matter. The facts of this case do not require us to examine the church's relationship with, or ability to govern, its clergy.

9. Appellees also rely on *Green v. Westgate Apostolic Church,* 808 S.W.2d 547 (Tex.App.-Austin 1991, writ denied), for the proposition that only a real property dispute conveys jurisdiction on a court to hear a matter involving a church. However, as previously noted, courts have jurisdiction to review matters involving civil, contract, or property rights even though they may stem from a church controversy. *Dean,* 994 S.W.2d at 395. Moreover,

stead, Lacy seeks access to the church's financial records under the provisions of the Act, a neutral principle of law.

Appellees urge us to find that Lacy's request to review the books in accordance with the Act involves religious or ecclesiastical matters. We do not interpret Lacy's request as involving any religious doctrine or precept. Resolution of the dispute does not require that we intervene in the hiring, firing, discipline, or administration of the Church's clergy, nor that we address the conformity of members to the Church's standards of morality, or any other matters traditionally held to involve religious doctrine. Further, we are not being called upon to interpret any Church constitution, by-laws, or other governing documents. In fact, there are no documents in the record indicating how or by whom the Church is governed. Moreover, we are not asked to decide matters relating to the hierarchical or congregational nature of the Church.

Lacy does not cite nor has our research revealed any Texas case squarely addressing the issue before us. Courts in other jurisdictions however have addressed similar disputes and those decisions are instructive here. In *Bourgeois v. Landrum*,[10] the Louisiana Supreme Court specifically examined "whether the

First Amendment protects a church organized under a state's non-profit corporation law from the enforcement in civil court of a . . . member's statutory right to examine the records of the corporation." [11] 396 So.2d 1275, 1276 (La.1981). There, the trial court had ruled it lacked jurisdiction to hear the matter and the appellate court affirmed, holding that "since the matter at issue is not a dispute over property rights but possible dissension regarding church management, courts lack jurisdiction to intervene." *Id.* The Louisiana Supreme Court reversed, however, noting that "regardless of whether the . . . case may be classified as a property dispute, the underlying First Amendment principles, which protect against entanglement of civil courts in questions of religious doctrine, polity[,] or practice, are not offended by the judicial enforcement of a statute requiring a church, as a non-profit corporation, to keep at its registered office, corporate records for examination by its voting members." *Id.* at 1277. Likewise, in *Watson v. Christie*, a New York appellate court affirmed the trial court's decision allowing a church member to inspect the church's financial records pursuant to that state's Not–for–Profit Corporation Law. 288 A.D.2d 29, 732 N.Y.S.2d 405, 406 (2001); *see* N.Y. NOT–FOR–PROFIT CORPORATION LAW § 621 (McKinney

in *Green*, the appellate court acknowledged that the Act did impart rights on the members, but the Act could not override the more specific hierarchical structure of the church. *See id.* Here, there is no evidence in the record that the requirements of the Act conflict with any provisions of the church's by-laws.

10. The plaintiffs, members of the appellant church, filed suit against the church and its pastor for a court order allowing them to examine the records which every non-profit corporation was required to keep under Louisiana's statute. 396 So.2d 1275, 1276 (La.

1981). The trial court ordered the church and its pastor to permit the examination; however, plaintiffs were not satisfied they had been allowed access to all of the records and served interrogatories on the church. *Id.* Ultimately, the church filed an exception based upon lack of jurisdiction, which the trial court sustained. *Id.*

11. Relative to this appeal, Louisiana's Non–Profit Corporation Act is similar to Texas's Act, allowing access to the corporation's records by members of the corporation. *See* LA.REV.STAT. ANN. § 12:223 (West 2002).

1997).[12] The court concluded that the church's First Amendment rights were not violated by inspection of its records because the questions involved were not concerned with internal ecclesiastical or religious issues, but only secular ones. *Watson*, 732 N.Y.S.2d at 407. We agree.

By incorporating under the Act, the Church has become amenable to the provisions of that statute. The trial court was merely called upon to uphold the plain language of the Act[13] and ensure Lacy was allowed access to the Church's books and records in accordance with the statute. This judicial function does not jeopardize the ability of religious organizations to establish religious doctrine or develop their internal rules and regulations, nor does it implicate secular interests in purely ecclesiastical matters; therefore, First Amendment principles are not offended. *See Bourgeois*, 396 So.2d at 1278; *Watson*, 732 N.Y.S.2d at 407. We find Lacy's request to review the Church's records merely requires the trial court to enforce a neutral principle of law.

We acknowledge, as appellees argue, that a dispute may arise regarding the Church's finances should Lacy be allowed access to its records; however, the issue now before us cannot be resolved based upon what *may* happen. The trial court dismissed Lacy's claims for lack of subject matter jurisdiction relying upon the ecclesiastical abstention doctrine. Because under these circumstances the court is not required to involve itself with any religious doctrine or principles, we conclude the trial court erred in dismissing Lacy's declaratory judgment action and contract claim on the basis that it lacked subject matter jurisdiction. Accordingly, we reverse and remand.[14]

---

12. New York's Not–For–Profit Corporation Law restricts a member's access to only those financial statements for the preceding fiscal year. *See* N.Y. NOT-FOR-PROFIT CORPORATION LAW § 621(e). However, in *Watson* the church's by-laws permitted a broader inspection to its members. 732 N.Y.S.2d at 407.

13. *See supra* note 4.

14. Because of our conclusion on this issue, we do not address Lacy's remaining argument.