Affirmed and Memorandum Opinion filed December 13, 2005









Affirmed
and Memorandum Opinion filed December 13, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-01110-CV

____________

 

LARRY ALEXANDER,
JAMES PINKNEY, EDWARD USHER, EDWARD JEFFERSON, GLENN JEFFERSON, JENNY JEFFERSON, Appellants

 

V.

 

DAVID ALLEN,
SPENCER BYNES, GEORGE ALFORD, DAVID ALLEN, JR., LORIE FOX, AND SAMUEL SANDERS,
REPRESENTING THE INTEREST OF CHRIST TEMPLE APOSTOLIC CHURCH, INC., Appellees

 



 

On Appeal from the 295th
District Court

Harris County, Texas

Trial Court Cause No. 04-24406

 



 

M E M O R A N D U M   O P I N I O N

This appeal arises from disagreements
between two factions within the governing body of Christ Temple Apostolic
Church, Inc. (ACTAC@).  Appellants challenge the trial court=s final judgment
granting appellees= plea to the jurisdiction.[1]  We affirm.








CTAC is a hierarchical church and a Texas non-profit
corporation.  It belongs to the
Pentecostal Assemblies of the World, Inc. (APAW@), and was
incorporated in 1976.  In 1984, CTAC=s board of
directors unanimously elected David Allen, Sr. (AAllen@) pastor and, in
1986, adopted bylaws.  Appellants are
former church deacons and the church secretary. 
Each was a long-time board member who disapproved of Allen=s style of church
management.

CTAC=s board of directors and Allen have
maintained a simmering dispute for several years.  In effect, Allen believes the church is a Apastor-led@ church, not a Aboard-run@ church.  The board contends that, pursuant to CTAC=s bylaws and
constitution, Allen is the church=s spiritual leader
and cannot veto the board=s final decisions or unilaterally appoint
or terminate directors without the board=s approval.  In 2001, Allen attempted to rewrite church
bylaws as part of a Atransition of transitions@ for the church,
but the board would not approve the change. 
In 2003, Allen attempted to appoint six new board members at a special
meeting whom the directors (including appellants) opposed.  These appointees began attending meetings
while the CTAC directors voiced their disapproval.  Allen informed one director at a board
meeting that he could participate only as an Aemeritus,@ without voting
rights.[2]  At later meetings, Allen made comments such
as Ayou cannot vote
down God=s will@ and, as pastor,
he Ahas some rights,
which [the board] do[es] not understand.@








The ongoing disagreements culminated when
Allen unilaterally removed Edward Usher, Jenny Jefferson, Glenn Jefferson and
Edward Jefferson from the board, appointing new members, changing the church=s locks, and
attempting to change the authorized signers on CTAC=s bank
accounts.  After learning of the
governance problems, CTAC=s bank filed an action in interpleader to
place church property into the court registry. 
Appellants requested the trial court enjoin Allen from running the
church without board approval and from excluding them from church
activities.  Appellees filed, inter
alia, a plea to the jurisdiction which the trial court ultimately granted.[3]

The sole issue on appeal is whether the
trial court properly granted appellees= plea to the
jurisdiction.  Appellants argue the
conflict is purely secular; namely, whether Allen=s Awillful and
illegal exercise of control@ over CTAC=s finances and
administration is proper.  This dispute,
however, is not about propertyCno one disputes
CTAC owns the property held in the court registry.  This dispute concerns who should run the
church; that is, who comprises the official board of directors, and how the
church should be governed.

A plea to the jurisdiction is a dilatory
plea seeking to defeat a plaintiff=s claims
regardless of their merit by challenging a court=s jurisdiction to
hear the subject matter of the dispute.  Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000); Lacy v.
Bassett, 132 S.W.3d 119, 122 (Tex. App.CHouston [14th
Dist.] 2004, no pet.).  The trial court
looks to the plaintiff=s petition and accepts its allegations as
true when deciding a plea to the jurisdiction, but may also consider evidence
relevant to resolving jurisdictional issues. 
Bland Indep. Sch. Dist., 34 S.W.3d at 555.  To prevail, the defense must show that, even
if all allegations in the plaintiff=s pleadings are
true, there remains an incurable jurisdictional defect on the face of the
pleadings that deprives the trial court of subject matter jurisdiction.  Brenham Hous. Auth. v. Davies, 158
S.W.3d 53, 56 (Tex. App.CHouston [14th Dist.] 2005, no pet.).  We review the trial court=s ruling de
novo.  Tex. Dep=t of Parks and
Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004).








The First Amendment to the United States
Constitution, applied to the states through the Fourteenth Amendment, provides ACongress shall
make no law respecting an establishment of Religion, or prohibiting the free
exercise thereof.@  U.S. Const. amends. I, XIV.  Therefore, the First Amendment prohibits
civil courts from resolving church disputes on the basis of religious doctrine
and practice.  Jones v. Wolf, 443
U.S. 595, 602 (1979).  A civil court may
adopt an approach, including neutral principles of law, for resolving church
disputes involving no consideration of doctrine, polity, or practice.  Hawkins v. Friendship Missionary Baptist
Church, 69 S.W.3d 756, 759 (Tex. App.CHouston [14th
Dist.] 2002, no pet.) (citing Jones, 443 U.S. at 604).  Under the Aneutral principles
of law@ approach, a court
may interpret church documents such as the church=s constitution and
bylaws to determine purely secular matters without relying on religious
precepts to resolve the conflict.  Lacy,
132 S.W.3d at 123; see also Hawkins, 69 S.W.3d at 759 (holding court may
interpret church documents in purely secular terms but declining to resolve
power struggle within church without any governing church documents to review);
Dean v. Alford, 994 S.W.2d 392, 395 
(Tex. App.CFort Worth 
1999, no pet.) (noting civil courts have jurisdiction to review matters
involving civil, contract, or property rights even though matters stem from
church controversy).  If the matter
cannot be resolved without delving into a religious controversy, the court must
defer to the resolution of the doctrinal issue by an authoritative
ecclesiastical body.  Jones, 443
U.S. at 604.

CTAC=s bylaws state that the official board Ashall consist of
the Pastor, the Deacons, Trustees, and the Church Secretary.@  Because the bylaws do not explicitly
establish the process for selecting board members, appellants argue directors
must be elected by the board according to Texas law, which provides:

If the method of election, designation, or appointment [of
directors] is not provided in the articles of incorporation or by‑laws,
the directors, other than the initial directors, shall be elected by the board
of directors.








Tex. Rev. Civ. Stat. Ann. art. 1396B2.15B (Vernon
2003).  CTAC=s bylaws, however,
provide for the selection of certain officers who, by their status, then become
board members.  Because the bylaws are
not silent on this point, the statutory provision is superfluous.  See Green v. Westgate Apostolic Church,
808 S.W.2d 547, 552 (Tex. App.CAustin 1991, writ
denied) (explaining court must defer to bylaws in conflict between general
procedure of Texas Non-Profit Corporation Act and specific procedures in church
bylaws).

Under CTAC=s bylaws, deacons
are appointed by the pastor and hold office Auntil he resigns,
or his life, or because of sin disqualifies him, and therefore is requested to
resign by the Official Board.@  The bylaws reveal that deacons hold a high
position in the church, and must meet very high scriptural qualifications.  Although the bylaws do not specifically state
how the church secretary is selected, they do provide that church officers
include deacons, trustees and secretaries, and that A[a]ll offices and
vacancies shall be filled through ELECTION, except in those instances where the
Pastor finds it necessary to appoint.@  The bylaws also state that the church
secretary and three trustees of the board=s choosing shall
be authorized to sign church checks, and that the trustees are to be the legal
designees of CTAC, to serve as signatories or to represent CTAC in all Aprudential@ matters.[4]  While it appears Allen could properly appoint
a deacon or officer, it appears he could not remove deacons without a request
from the board.  However, as deacons are
also officers under CTAC=s bylaws, they can be removed from their
office as follows:

Any member who
fails to support the church through tithes and offerings, or who fails to
show a cooperative attitude toward the Pastor, and the church program
shall not be eligible to hold any office, or take part in voting on issues
brought to the congregation for passing.








(Emphasis
added).[5]  There is no provision establishing who
determines whether a member is uncooperative with the pastor and church
program, although similar bylaw sections provide that members may be Asilenced,
disfellowshipped, or otherwise disciplined at the spiritual discretion of the
Pastor or the Pastor and deacon board,@ and that such
action is appropriate when the member is in sin, does not comply with church
teachings, or is disobedient to the pastor and church rules.  This lends insight to the underlying problem
within this church: Must members, including directors, be obedient to Allen in
all decisions or else be punished?  We
cannot answer this question; it must be decided by an appropriate
ecclesiastical body.  See Serbian E.
Orthodox Diocese v. Milivojevich, 426 U.S. 696, 709 (1976) (quoting Md.
& Va. Eldership of the Church of God. v. Church of God at Sharpsburg, Inc.,
396 U.S. 367, 369 (1970) (Brennan, J. concurring)) (explaining a civil court
cannot probe into the allocation of power within a hierarchical church to
decide governing church polity without violating the First Amendment in the
same manner as determining religious doctrine). 
Even if wrongs exist in an ecclesiastical setting and church administration
is inadequate to provide a remedy, the preservation of the free exercise of
religion is so important a principle that it overshadows the inequities that
may result from its liberal application.  
Hawkins, 69 S.W.3d at 759 n.3.

We hold the subject matter of this dispute is ecclesiastical
and, therefore, beyond the trial court=s subject matter
jurisdiction.  We affirm the trial court=s judgment.

 

 

 

 

/s/      J.
Harvey Hudson

Justice

 

 

Judgment rendered and Memorandum
Opinion filed December 13, 2005.

Panel consists of Justices Hudson,
Frost, and Seymore.











[1]  Larry
Alexander, James Pinkney, Edward Usher, Edward Jefferson, Glenn Jefferson, and
Jenny Jefferson are Aappellants.@  AAppellees@ are David Allen, Spencer Bynes, George Alford, David
Allen, Jr., Lorie Fox, and Samuel Sanders, representing the interest of Christ
Temple Apostolic Church, Inc.





[2]  Allen claimed
his action was Aan act of love,@ and
that he wanted to relieve stress for the Aemeritussed@ board member, who stated at the same meeting that he
wanted to remain on the board.





[3]  Appellees
filed an affidavit from Bishop William Ellis stating that Allen=s removal and appointment of board members was done
with Ellis= blessing. 
Ellis concludes his affidavit by ordering the money deposited in the
court registry be immediately released to CTAC Aunder
the supervision and control@ of Allen, the CTAC board, and Ellis.  At the time he made this affidavit, Ellis was
under indictment for multiple counts of tax fraud including the conversion of
church property to his personal use.





[4]  Although APrudential@ is not
defined in CTAC=s bylaws, the PAW Organizational Manual uses the term
to refer to non‑ecclesiastical matters.





[5]  Allen did not remove Larry
Alexander and James Pinkney from the board. 
Appellees claim Alexander is currently a Adeacon in question@ because he stopped participating
in board affairs when Allen removed the other appellants, and that Pinkney
resigned shortly after Allen terminated the appellant board members.  Regardless of whether these appellants were
removed by Allen or resigned, Allen=s attempt to remove both Pinkney and Alexander as
authorized signers on church accounts show his intent to strip them of their
trustee/officer status at CTAC.