185 P.3d 913

Herminia BALDONADO, Ernesto Baldonado, Argelino Canesco, Paul Nicolas, Virginia Garo, Enriqueta Taoatoa, Lolita Vallente, Juana Sabugo, Mathie Geronimo, Pacita Rogas, Conception Ariola, Reynaldo Sarmiento, Bienvendio D. Lumbo, Israel T. Callo, Reymundo G. Miguel, Ricardo Garo, Marcelina Garo, Arnaldo P. Rogas, Salome Rogas, Juanita Sadang, and Narcisco Sadang, Plaintiffs–Appellants,

v.

The WAY OF SALVATION CHURCH, Defendant–Appellee,

and

John Does 1–10; Jane Does 1–10; Doe Corporations 1–10; Doe Partnerships 1–10; Doe Non–Profit Organizations 1–10; Doe Governmental Agencies 1–10, and Doe Entities 1–10, Defendants.

Nos. 27169, 27298.

Intermediate Court of Appeals of Hawai'i.

April 10, 2008.

As Corrected April 30, 2008.

Certiorari Denied July 16, 2008.

Certiorari Rejected Aug. 19, 2008.

John T. Hoshibata (Margery S. Bronster and Alan B. Burdick with him on the briefs), (Bronster Hoshibata), Honolulu, for Plaintiffs–Appellants.

Bryan P. Andaya (Wesley M. Fujimoto with him on the brief), Honolulu, for Defendant–Appellee.

FOLEY, Presiding Judge, FUJISE, J., and Circuit Judge PERKINS, in Place of RECKTENWALD, C.J., WATANABE and NAKAMURA, JJ., All Recused.

Opinion of the Court by FOLEY, J.

In this consolidated appeal from the Circuit Court of the First Circuit,[1] Plaintiffs–Appellants Herminia Baldonado, Ernesto Baldonado, Argelino Canesco, Paul Nicolas, Virginia Garo, Enriqueta Taoatoa, Lolita Vallente, Juana Sabugo, Mathie Geronimo, Pacita Rogas, Conception Ariola, Reynaldo Sarmiento, Bienvendio D. Lumbo, Israel T. Callo, Reymundo G. Miguel, Ricardo Garo,

1. The Honorable Bert I. Ayabe presided.

Marcelina Garo, Arnaldo P. Rogas, Salome Rogas, Juanita Sadang, and Narciso Sadang (collectively, Appellants) appeal from

(1) the Final Judgment as to All Claims Between All Parties filed on February 7, 2005 (No. 27169), in which the circuit court granted the January 26, 2004 Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Motion to Dismiss) filed by Defendant–Appellee The Way of Salvation Church (the Church) as to all of Appellants' claims in their Amended Verified Complaint; and

(2) the Final Judgment as to All Claims Between All Parties filed on April 20, 2005 (No. 27298), in which the circuit court denied Appellants' motion for reconsideration of the court's grant of the Church's Motion to Dismiss.

On appeal, Appellants argue the following points of error:

(1) To the extent the circuit court ruled that Appellants lacked standing because Appellants had been expelled from the Church, no matter how unfair the expulsion process was, the court erred as a matter of law.

(2) To the extent the circuit court ruled, under Hawai'i Rules of Civil Procedure (HRCP) Rule 12(b)(1), that Appellants had been properly expelled from the Church, the court erred.

(3) To the extent the circuit court dismissed the case or granted summary judgment in implied reliance on the "ecclesiastical abstention doctrine," the court erred as a matter of law.

(4) The circuit court should have granted Appellants' motion to amend their complaint a second time to state new claims based on Appellants' illegal "expulsion" from the Church and to add updated claims as to the Church's financial management.

For the reasons stated below, we vacate the February 7 and April 20, 2005 final judgments entered by the circuit court.

### I.

On December 26, 2003, Appellants, "in their capacity as members of [the Church],"

filed an Amended Verified Complaint.[2] Appellants alleged that the Church was a nonprofit corporation[3] that had been granted a Charter of Incorporation on or about November 12, 1957 and had filed its By–Laws on May 15, 1958. They further alleged that the charter had been granted to the Church on the conditions that the Church was "not organized for profit, that no part of [the Church's] assets, income, or earnings shall be withdrawn or distributed to any of its members, and that officers, employees, or members of [the Church] would not be paid for services that were not rendered or to be rendered to [the Church]." Appellants contended that the Church's directors and/or officers were "substantially constituted of immediate members" of the family of Pastor Mariano C. Caneso (Pastor Caneso), the founder of the Church, and that these family members had "dominated and controlled the business and affairs of [the Church] for their own personal benefit." Appellants challenged, as illegal, amendments made in 1996 and 2000 to the Church's By–Laws and asserted that the Church had paid for various real properties being used by Pastor Caneso and his family members as personal residences. Appellants also claimed that between 2000 and 2002, Pastor Caneso and his family had been paid more than $207,000 in compensation by the Church and the Church had authorized them to lease expensive automobiles. Appellants alleged that the Church had "engaged in unfair and deceptive acts and practices in violation of HRS § 480–2 [ (1993 & Supp.2007) ]." Appellants further alleged that, inter alia, the Church had breached its fiduciary duties, obtained secret profits, wasted corporate assets, jeopardized its tax-exempt status, and, in November 2003, conducted a faulty election of the Church's directors.

On January 26, 2004, the Church filed its Motion to Dismiss, in which it argued that Appellants lacked standing to maintain the action. On April 14, 2004, the Attorney General of the State of Hawai'i filed an amicus

---

**2.** Appellants had filed their Verified Complaint on December 8, 2003.

**3.** Hawai'i non-profit corporations are governed by the Hawaii Nonprofit Corporations Act, codified at Hawaii Revised Statutes Chapter 414D.

brief in opposition to the Motion to Dismiss, stating that members of the Church did have standing. The Attorney General further stated that, inter alia, the 1996 and 2000 amendments to the Church's By–Laws were invalid; the Church's board of directors was illegally constituted; from 2000 through February 2003, the members of the Caneso family had received more than $480,000 in compensation "without approval of a disinterested or elected board of directors"; and there existed various other accounting discrepancies and financial irregularities pertaining to the governance of the Church.

On May 30, 2004, the Church expelled 156 of its members, including Appellants. On June 2, 2004, the Church filed a second supplemental reply memorandum in support of it Motion to Dismiss, arguing that Appellants lacked standing to sue because the Church had expelled Appellants.

On June 28, 2004, without obtaining leave of court, Appellants filed their Second Amended Verified Complaint. On July 20, 2004, Appellants filed a Motion for Leave to Amend and Supplement First Amended Complaint Nunc Pro Tunc (Motion to Amend Complaint), in which Appellants asked the circuit court to allow their filed Second Amended Verified Complaint to be permitted nunc pro tunc. In their Second Amended Complaint, Appellants added allegations that, inter alia, the November 2003 election of the board of directors was improper and money had disappeared from contributions from the Church's Seattle congregation, to the Church's affiliate in the Philippines, and to the building of a new church in Wahiawa. Appellants also added claims of intentional and/or negligent infliction of emotional distress and alleged a count under HRS § 842–2 (1993), Hawai'i's anti-racketeering statute.

On July 28, 2004, Appellants filed a Motion for Appointment of Receiver.

On September 7, 2004, the circuit court heard the Church's Motion to Dismiss.

On October 21, 2004, the circuit court filed its order granting the Motion to Dismiss, in which it ruled that because Appellants were no longer Church members, Appellants lacked standing to maintain the action. On the same date, the circuit court filed its orders denying, as moot, Appellants' Motion to Amend Complaint and Motion for Appointment of Receiver.

Appellants secured new counsel and, on November 4, 2004, filed a motion for reconsideration of the order granting the Motion to Dismiss. The Attorney General moved for leave to file an amicus brief in support of that motion.

The circuit court filed a judgment on February 7, 2005 as to the Motion to Dismiss, and Appellants timely filed a notice of appeal from that judgment. On March 29, 2005, the circuit court filed its order denying the motion for reconsideration. On April 20, 2005, the circuit court entered a judgment as to the motion for reconsideration, and Appellants timely filed a notice of appeal from that judgment.

On May 24, 2005, the Hawai'i Supreme Court granted Appellants' request to consolidate the appeals from the February 7, 2005 and April 20, 2005 judgments.

## II.

### A. Summary Judgment

"We review the circuit court's grant or denial of summary judgment de novo." *Querubin v. Thronas*, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (quoting *Durette v. Aloha Plastic Recycling, Inc.*, 105 Hawai'i 490, 501, 100 P.3d 60, 71 (2004)).

The Hawai'i Supreme Court has often articulated that

summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Querubin*, 107 Hawai'i at 56, 109 P.3d at 697 (quoting *Durette*, 105 Hawai'i at 501, 100 P.3d at 71).

Hawai'i Rules of Civil Procedure (HRCP) Rule 56(e) provides in relevant part:

**Rule 56. Summary judgment.**

. . . .

*(e) Form of affidavits; further testimony; defense required.* . . . When a motion for summary judgment is made . . ., an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Thus, "[a] party opposing a motion for summary judgment cannot discharge his or her burden by alleging conclusions, 'nor is [the party] entitled to a trial on the basis of a hope that [the party] can produce some evidence at that time.'" *Henderson v. Prof'l Coatings Corp.*, 72 Haw. 387, 401, 819 P.2d 84, 92 (1991) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 2727 (1983)).

**B. Motion to Dismiss**

"A trial court's ruling on a motion to dismiss is reviewed de novo." *Kamaka v. Goodsill Anderson Quinn & Stifel*, 117 Hawai'i 92, 104, 176 P.3d 91, 103 (2008).

**C. Motion for Leave to Amend Complaint**

HRCP Rule 15(a) (2000) provides that "leave [to amend a complaint] shall be

freely given when justice so requires." This court has interpreted the rule as meaning that "the grant or denial of leave to amend under Rule 15(a) is within the discretion of the trial court." *Associated Eng'rs & Contractors v. State*, 58 Haw. 187, 218, 567 P.2d 397, 417 (1977) (citing *Bishop Trust Co., Ltd. v. Kamokila Dev. Corp.*, 57 Haw. 330, 555 P.2d 1193 (1976)).

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Associated Eng'rs & Contractors*, 58 Haw. at 218–19, 567 P.2d at 417 (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227[, 230, 9 L.Ed.2d 222] . . . (1962)).

*Tri–S Corp. v. Western World Ins.Co.*, 110 Hawai'i 473, 490, 135 P.3d 82, 99 (2006).

**III.**

**A. Hawaii Nonprofit Corporations Act**

Appellants rely on the Hawaii Nonprofit Corporations Act, HRS Chapter 414D, stating that by registering under the statute, the Church has voluntarily submitted itself to the jurisdiction of the state civil courts. Appellants contend that because the Church's act of expelling them from the congregation was not "fair and reasonable" as required by HRS § 414D–89(b)(2) (2004 Repl.) and the expulsion process violated the Church's own By–Laws, they have standing to maintain this action.[4] Appellants claim that because

---

4. Appellants point to the Church's 1958 By-Laws, which provide for expulsion of Church members in the following manner:

*ARTICLE V—MEMBERSHIP*

. . . .

*Section 5. Expulsion.* A member may be expelled from the membership of this Church with or without cause upon (1) the vote of two-thirds (2/3) of the members of the Board of Directors present at a meeting called for such purpose and ratified by (2) the vote of two-thirds (2/3) of the members of this Church present at a meeting called for such purpose.

The By–Laws also contain a provision for the setting of meetings:

*ARTICLE VI—MEETINGS*

. . . .

*Section 3. Notice.* Notice of annual or special meetings shall set forth the time and place of the meeting and shall be given in either of the following two (2) ways:

a. By written notice mailed to the voting members at their last known post office address in Honolulu at least ten (10) days before the meeting, and an announcement of said meeting made from the pulpit at the Sunday service immediately prior thereto, or

they were never lawfully expelled from the Church, they are still members and thus have a right under the Hawaii Nonprofit Corporations Act to inspect the Church's books and records.

The Hawaii Nonprofit Corporations Act states in relevant part:

§ 414D–89 **Termination, expulsion, and suspension.** (a) No member may be expelled or suspended, and no membership or memberships in such corporations may be terminated or suspended except pursuant to a procedure that is fair and reasonable, and is carried out in good faith.

(b) A procedure shall be fair and reasonable when either:

(1) The articles or bylaws set forth a procedure that provides:

(A) Not less than fifteen days prior written notice of the expulsion, suspension or termination and the reasons therefor; and

(B) An opportunity for the member to be heard, orally or in writing, not less than five days before the effective date of the expulsion, suspension, or termination by a person or persons authorized to decide that the proposed expulsion, termination, or suspension not take place; or

(2) It is fair and reasonable taking into consideration all of the relevant facts and circumstances.

## B. Ecclesiastical Abstention Doctrine

Appellants argue that the ecclesiastical abstention doctrine should not bar their action because they are alleging secular causes of action and not non-reviewable matters of church polity or doctrine. Appellants further argue that the circuit court could have reviewed the purportedly unlawful expulsion according to the Church's By–Laws and HRS § 414D–89 (2004 Repl.) and in so doing would not have needed to make any constitutionally prohibited inquiry into doctrinal matters or religious law. Although set forth as three separately enumerated points of error, the points are inextricably linked (for the purposes of our analysis) into the single question of whether the expelled church members can use the Hawaii Nonprofit Corporations Act as a vehicle for enforcement of the Church's By–Laws despite the constitutional doctrine of ecclesiastical abstention.

The First Amendment to the United States Constitution provides, in relevant part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" The Fourteenth Amendment to the United States Constitution makes the First Amendment applicable to the states. *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). Article I, § 4 of the Hawai'i Constitution provides, in relevant part, that "[n]o law shall be enacted respecting an establishment of religion, or prohibiting the free exercise thereof[.]"

The United States Supreme Court in *Serbian Eastern Orthodox Diocese for United States of America & Canada v. Milivojevich*, 426 U.S. 696, 698, 96 S.Ct. 2372, 2375, 49 L.Ed.2d 151 (1976), held that the Illinois Supreme Court contravened the First and Fourteenth Amendments to the United States Constitution when it inquired "into matters of ecclesiastical cognizance and polity" to resolve a church property dispute that involved the defrockment of a bishop. Justice Brennan, delivering the opinion of the court, wrote:

The fallacy fatal to the judgment of the Illinois Supreme Court is that it rests upon an impermissible rejection of the decisions of the highest ecclesiastical tribunals of this hierarchical church upon the issues in dispute, and impermissibly substitutes its own inquiry into church polity and resolutions based thereon of those disputes. Consistently with the First and Fourteenth Amendments "civil courts do not inquire whether the relevant (hierarchical) church governing body has power under religious law (to decide such disputes).... Such a determination ... frequently necessitates the interpretation of ambiguous religious law and usage. To permit civil courts to probe deeply enough into the

---

b. By written notice posted on the Church bulletin board and an announcement of said meeting made from the pulpit at least two (2) consecutive Sundays immediately prior thereto.

allocation of power within a (hierarchical) church so as to decide ... religious law (governing church polity) ... would violate the First Amendment in much the same manner as civil determination of religious doctrine." *Md. & Va. Churches v. Sharpsburg Church*, 396 U.S. 367, 369, 90 S.Ct. 499, 500[–01], 24 L.Ed.2d 582 (1970) (Brennan, J., concurring). For where resolution of the disputes cannot be made without extensive inquiry by civil courts into religious law and polity, the First and Fourteenth Amendments mandate that civil courts shall not disturb the decisions of the highest ecclesiastical tribunal within a church of hierarchical polity, but must accept such decisions as binding on them, in their application to the religious issues of doctrine or polity before them. *Ibid.*

426 U.S. at 708–09, 96 S.Ct. at 2380.

*O'Connor v. Diocese of Honolulu*, 77 Hawai'i 383, 885 P.2d 361 (1994), is the leading Hawai'i case on ecclesiastical abstention doctrine. In *O'Connor*, a Catholic newspaper publisher brought an action against the diocese and various diocesan officials claiming he was wrongfully excommunicated due to the diocese's opposition to views expressed in his newspaper. *Id.* at 384, 885 P.2d at 362. On appeal, after the case had been dismissed with prejudice by the circuit court, the Hawai'i Supreme Court held, citing *Milivojevich*, that the ecclesiastical abstention doctrine barred the circuit court from addressing any of the publisher's claims because such resolution would require resolution of controversies over church doctrine, law, or polity. *O'Connor*, 77 Hawai'i at 391–92, 885 P.2d at 369–70. *O'Connor* and *Milivojevich* concerned churches that were hierarchical.

The Church in the case at hand is not a hierarchical church, but a congregational church that makes decisions by a vote of its members as set forth in its "Petition for Charter" of incorporation and By–Laws. *Kennedy v. Gray*, 248 Kan. 486, 493–95, 807 P.2d 670, 676–77 (1991) (a congregational church makes decisions by majority vote). The Church is governed by HRS Chapter 414D.

In *Kennedy*, the plaintiffs were church members seeking access to the church's books. 248 Kan. at 488, 807 P.2d at 672–73.

The church expelled the plaintiffs and moved for summary judgment. *Id.* at 488–89, 807 P.2d at 673. The trial court granted summary judgment on the ground that plaintiffs lacked standing. *Id.* at 490, 807 P.2d at 674. The Kansas Supreme Court reversed, holding that the church was a congregational church, where decisions were made by a majority vote, and not a hierarchical church with internal tribunals and procedures. *Id.* at 494–95, 807 P.2d at 676–77. Because the church was congregational, the supreme court reasoned that it was possible for an aggrieved member to

> appeal only to the simple and fundamental principles of democratic government which are universally accepted in our society. These principles include the right to reasonable notice, the right to attend and advocate one's views, and the right to an honest count of the votes. Such rights are fundamental to our notions of due process. They are neutral principles of law[.]

*Id.* at 494, 807 P.2d at 676. The Kansas Supreme Court cited to

> *Reid v. Gholson*, 229 Va. 179, 327 S.E.2d 107, *cert. denied* 474 U.S. 824, 106 S.Ct. 80, 88 L.Ed.2d 65 (1985), [where] the Virginia Supreme Court explained that hierarchical churches have their own established rules for discipline and internal government. The [Virginia Supreme Court] noted that these tribunals are frequently inherently tied to and based on ecclesiastical law developed over long periods of time. The court, relying on [*Milivojevich*], said that to delve into the decisionmaking processes of these bodies would entangle a court into the "religious thicket." 229 Va. at 187, 327 S.E.2d [at 112].

248 Kan. at 494, 807 P.2d at 676 (bracketed material not in original).

In *Reid v. Gholson*, 229 Va. 179, 327 S.E.2d 107 (1985), the Virginia Supreme Court distinguished congregational churches from hierarchical ones:

> They are free to adopt constitutions, bylaws, and internal rules which will alter or regulate their proceedings, but even these must be enacted by majority vote. And in the absence of such voluntarily-adopted rules, each such congregation functions as

a pure democracy. When the majority has spoken in a fairly-conducted congregational meeting held after proper notice to the membership, then the governing body of the church has expressed its will and, as in the case of an hierarchical church, its decision is constitutionally immune from judicial review.

The situation is otherwise, however, when the members of a congregational church merely seek the protection of the court for the purpose of obtaining a fairly-conducted meeting in the first place. Here the analogy to hierarchical churches breaks down because there is no body of ecclesiastical law to invoke, no internal tribunal to appeal to. A member of a congregational church, seeking the aid of the court in protecting his civil and property rights, may appeal only to the simple and fundamental principles of democratic government which are universally accepted in our society. These principles include the right to reasonable notice, the right to attend and advocate one's views, and the right to an honest count of the votes. Such rights are fundamental to our notions of due process. They are neutral principles of law, applicable not only to religious bodies, but to public and private lay organizations and to civil governments as well. Courts must apply them every day, and can do so without any danger of entering a "religious thicket." Therefore, the authorities which preclude the courts from examining whether an hierarchical church correctly followed its own internal procedures, or correctly applied its canon law, are inapposite to the question before us.

229 Va. at 189–90, 327 S.E.2d at 113.[5]

In *Lacy v. Bassett*, 132 S.W.3d 119 (2004), the Court of Appeals of Texas held that the ecclesiastical abstention doctrine did not preclude a trial court from having subject matter jurisdiction over a declaratory judgment action (alleging violations of the Texas Non-Profit Corporation Act and breach of con-

tract) by a church member who was denied access to a church's financial records. 132 S.W.3d at 121 & 126. The Texas Court of Appeals held that requiring the church to comply with the Non–Profit Corporation Act in granting a member access to the church's financial records did not involve any religious or ecclesiastical matter. 132 S.W.3d at 126. The Louisiana Supreme Court and the New York Appellate Court have similarly ruled in *Bourgeois v. Landrum*, 396 So.2d 1275 (La. 1981), and *Watson v. Christie*, 288 A.D.2d 29, 732 N.Y.S.2d 405 (2001), respectively. We agree with the Kansas Supreme Court in *Kennedy*, the Virginia Supreme Court in *Reid*, and the Texas Court of Appeals in *Lacy*.

We are not persuaded by the contrary view expressed in *Levitt v. Calvary Temple of Denver*, 33 P.3d 1227 (Colo.App.2001), where Levitt sought to inspect the defendant church's financial records pursuant to a Colorado law granting members of a non-profit corporation the right to inspect and copy that corporation's records. 33 P.3d at 1228. Subsequent to Levitt's request to inspect records, the church expelled Levitt from its membership. *Id.* The trial court ruled that Levitt had standing to request the records because he was a member of the church at the time he made the request. *Id.* Colorado's Court of Appeals reversed, holding that Levitt's status as an outsider rendered futile his purpose in obtaining the records. *Id.* at 1229. That court relied on *Milivojevich* in concluding that the ecclesiastical abstention doctrine precluded any review of the church's expulsion procedures, despite the provisions of the Colorado statute requiring "fair and reasonable" termination procedures in order to expel a member of a non-profit corporation.[6] *Levitt*, 33 P.3d at 1229–30.

The circuit court should have granted Appellants leave to amend their complaint and allow, nunc pro tunc, Appellants' Second Amended Verified Complaint so that they could raise the issue of their expulsion from

---

5. Other courts have reached results similar to *Kennedy* and *Reid. See, e.g., Abyssinia Missionary Baptist Church v. Nixon*, 340 So.2d 746 (Ala. 1976); *Konkel v. Metropolitan Baptist Church, Inc.*, 117 Ariz. 271, 572 P.2d 99 (App.1977); *Hardwick v. First Baptist Church of Perth Amboy*, 217 N.J.Super. 85, 524 A.2d 1298 (1987); *Ex parte McClain*, 762 S.W.2d 238 (Tex.App.1988).

6. Similarly, the Supreme Court of Oklahoma refused to review the expulsion of members of a church. *Fowler v. Bailey*, 844 P.2d 141 (Okla. 1992).

the Church. Appellants had standing to contest their expulsion and were not precluded from doing so by the ecclesiastical abstention doctrine. Furthermore, the ecclesiastical abstention doctrine does not bar Appellants' complaint to the extent it does not require resolution of controversies over church doctrine, law, or polity.

## IV.

Based on the foregoing, we vacate the February 7, 2005 Final Judgment as to All Claims Between All Parties and the April 20, 2005 Final Judgment as to All Claims Between All Parties filed in the Circuit Court of the First Circuit and remand this case for further proceedings consistent with this opinion.