**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.   A-0130-18T4
                          A-0271-18T4

MUSLIM UMMAH TRUST,
INC.,

        Plaintiff-Respondent,

v.

IQBAL HUSAEEN, MUBARAK
AHMED, MOHAMMED A.
RAHIM, MUHAMMAD MAIN
UDDIN, and MOHAMMAD
MAHUBUBUR RAHMAN,

        Defendants-Appellants.

_____

MUSLIM UMMAH TRUST,
INC.,

        Plaintiff-Respondent,

v.

IQBAL HUSAEEN, MUBARAK
AHMED, MOHAMMED A.
RAHIM, MUHAMMAD MAIN
UDDIN, and MOHAMMAD
MAHUBUBUR RAHMAN,

Defendants-Respondents.

_____

MOHAMMED A. HUSSAIN,
MOHAMMED WAHID
CHOWDHURY, MOHAMMED
M. HOSSAIN, ALAMGIR
HOSSAIN, SHAH JALAL,
MOHAMMED CHIDDIQUE,
MOKAROM HOSSAIN, ABDUL
MOTALEB, ASHIKUR RAHMAN,
RAFIQUL MOJUMDER, SUJEL
AHMED, MOHAMMED AL
FAROOK, HM HAQUE, MOHAMED
SALAM, TAREQ RAHMAN, ABU
AZIZ, SYED ASHRAFUL AHAMED,
and MOHAMMAD EKRAM ULLAH,

 Appellants.

_____

  Submitted December 9, 2019 – Decided March 16, 2020

  Before Judges Rothstadt and Moynihan.

  On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-1451-17.

  Callaghan Thompson & Thompson, PA, attorneys for appellants in A-0130-18 (Edward M. Thompson, on the briefs).

  Herman Law Offices, LLC, attorneys for appellants in A-0271-18 (Robert D. Herman, on the brief).

  Soliman & Associates, PC, attorneys for respondent Muslim Ummah Trust, Inc., in A-0130-18 and A-0271-18 (Ahmed M. Soliman, on the briefs).

2            A-0130-18T4

PER CURIAM

In these two appeals that were calendared back-to-back and consolidated for the purpose of filing a single opinion, defendants Iqbal Husaeen, Mubarak Ahmed, Mohammed A. Rahim, Muhammad Main Uddin, and Mohammad Mahbubur Rahman,[1] appeal from a judge's (the initial judge) August 3, 2017 order denying their motion to vacate temporary restraints and to dismiss the complaint filed by plaintiff, Muslim Ummah Trust, Inc. (plaintiff or Trust); Judge Christine Smith's (the trial judge) June 29, 2018 order of judgment, entered after a bench trial, invalidating resolutions by which defendants sought to change plaintiff's corporate structure and the manner in which plaintiff's board of directors are chosen; and the trial judge's August 23, 2018 order denying defendants' motion for reconsideration and a stay. Third-party appellants (intervenors) appeal from the trial judge's October 13, 2017 order denying their motion to intervene in the action plaintiff filed.[2]

---

[1] We note different spellings of some of defendants' names appear throughout the record. In order to avoid confusion, we use the names set forth in the caption of defendants' merits brief.

[2] Intervenors' motions for leave to appeal from the trial judge's order and for a stay were denied by this court and, subsequently, by the Supreme Court.

## I.

The Trust is a non-profit corporation established in June 2008 under Title 15A of the New Jersey Code. Its Organizational Documents (Documents)[3] provide that one of the Trust's purposes is to "operate on behalf of the community" a mosque. The Documents originally established seven members as the Trust's Board of Directors (Board). The Board was designated in the Documents as the governing body to execute the Trust's powers subject to stated charitable purposes. The Documents also allowed the Board to "increase said Board from seven initial members to another number provided that it has the requisite two[-]thirds of the seven members['] (five) vote[s]"; and to amend the Documents "by a majority vote of those voting at any meeting of the membership called for that purpose, provided that the notice of meeting of the membership shall have stated the nature of the proposed amendment." "Membership," as defined in the Documents, is the Board. The Documents required that members "be notified by regular mail of each meeting at least sixty days prior thereto."

---

[3] The Documents are often referred to in the record as bylaws.

The trial judge perpended copies of letters entered in evidence,[4] each sent on December 5, 2013 to "Member, Board of Directors" by codefendant Husaeen, as President of the Trust. The letters were addressed to all five defendants and Mohammed Emdadul Hoque and Md. Ziaul Islam, and informed them of a "special meeting" to be held on December 22, 2013. Among the agenda items listed in the letter was: "Necessary Amendment regarding organizational Document (Articles of Association of Muslim Umma [sic] Trust, Inc.)." According to minutes of the December 22, 2013 meeting, entered into evidence and reviewed by the judge,[5] that agenda item, "first amendment of organization document[,]" was approved and all five defendants' names and signatures were "taken underneath." The trial judge noted the "First Amendment" to the Documents was signed by six people. One signature—codefendant Rahman's—was dated January 2, 2014. Hoque's signature was dated December 22, 2013,

---

[4] The record contains only one letter addressed to Mubarak Ahmed. Although the trial judge's decision indicates the collective letters "are included in 'D1' in evidence," she later states, "'D1' in evidence is an eleven[-]page document titled 'Organizational Documents – First Amendment'" and, in her subsequent listing of the evidence, labels "Defendant #1 Organizational Documents – First Amendment." The discrepancy does not impact our analysis or decision.

[5] The judge noted the original minutes "are found on an unlined piece of white paper and stapled into a composition book that is in evidence[.] The original minutes are written in Bengali." The record contains an English translation of the minutes.

like the rest of those on the amended Document.  Islam's signature line was blank.

The trial judge also found:

> A resolution, dated December 22, 2013[,] and signed by five . . . of the seven . . . Board of Directors, is attached at the end of the First Amendment.  It is <u>not</u> incorporated by reference within the First Amendment.  It reads in relevant part:
>
> > RESOLUTION
> >
> > Resolution of the Muslim Ummah Trust, Inc., a New Jersey non-profit corporation, establishing a board of governors with powers to appoint bord [sic] of directors and trustees.
> >
> > WHEREAS, the Board of Directors conducted a special meeting for the purpose of discussing a change in the procedure for the appointment of future member[s] to the Board of Directors and board of trustees of the Corporation, and
> >
> > WHEREASE[sic], SAID Board of Directors have agreed that it is in the best interest of the corporation to establish the formation of a Board of Governors who will select such persons they deem to be qualified to fill future vacancies in the corporate Board of Directors and Board of Trustees,
> >
> > > . . . [.]
> >
> > RESOLVED:     that the corporate Organization Documents are hereby

6                                                    A-0130-18T4

amended to establish a Board of Governors which shall hereafter have the sole authority to appoint such persons whom they deem to be qualified to fill the future vacancies of members of the Board of Directors and Broad [sic] of Trustees of the corporation

RESOLVED: that the said board of Governors shall consists [sic] of thirty . . . members.

. . . [.]

RESOLVED: that Board of Governors shall served [sic] indefinite terms of office and vacancies shall be selected by the members of the board of Governors subject to approval of at [sic] majority vote.

. . . [.]

RESOLVED: that the Board of Governors shall be consider [sic] to be a permanent party of the corporate structure and as such, the Board of Directors shall not have the power or authority to dissolved [sic] or terminate the same.

The trial judge also reviewed a copy of a letter entered in evidence,[6] sent on December 13, 2013 to Md. Ziaul Islam by codefendant Husaeen, as President of the Trust. The letter was addressed to "Member, Board of Directors," and

---

[6] The record contains only one letter addressed to Mubarak Ahmed, not the one addressed to Islam.

informed of a "special meeting" to be held on January 2, 2014. Among the agenda items listed in the letter was: "Necessary Amendment regarding organizational Document (Articles of Association of MuslimUmma [sic] Trust, Inc.)." According to minutes of the January 2, 2014 meeting, entered into evidence and reviewed by the judge, that agenda item, "First Amendment Organization Document," was approved and all five defendants' names and signatures were, again, "taken underneath."

A hand-written "Decision," dated January 19, 2014, containing the purported signatures of all five defendants, Hoque and Islam, was also entered into evidence at the trial. The document, in addition to containing an acknowledgment that all members received "[ten] or [sixty] days['] notice to amend Article[s] of Association," provided: "Members, Members of the Board of Directors and members of Trustee Board (members)" decided to add eight members to the Board and the Trustee Board, increasing the total membership to fifteen.[7]

---

[7] As noted in defendants' merits brief, "Board of Trustees and Board of Directors is used interchangeably by [the Trust]," an observation borne out by our review of the Documents and other documentary evidence, although most of the Documents reference "Board of Directors." Indeed, plaintiff's complaint avers the Board of Directors is also known as "the Trustees."

Also in evidence were the minutes of a July 9, 2017 Board meeting, at which nine members were present.[8]  The trial judge recited a portion of the minutes in her decision:

> Members discussed the alleged Board Meeting resolutions from Jan[uary] 2, 2014.  It was noted that the resolution was invalid as it was not disclosed to the members of the Board.  Also noted that the Minutes of the Board Meeting from Jan[uary] 19, 2014 doesn't reflect that there were any meeting held on Jan[uary] 2, 2014.  The members noted that this resolution is invalid and fraudulent.  The meeting RESOLVED that the Board of Directors resolution from Jan[uary] 2, 2014 created a Board of Governors were not in effect and hereby rescinded completely.

The minutes from a Governors' meeting on July 19, 2017, also in evidence, indicate the Governors adopted a resolution reducing the Board from fifteen to seven members, and appointed seven people, including four of the five defendants (except Rahman) to the Board.

On July 14, 2017, plaintiff filed a verified complaint and order to show cause challenging the January 2, 2014 resolution establishing the Governors, and its concomitant grant to the Governors of the power to appoint Board members.  The initial judge granted the order to show cause and issued temporary restraints on July 19, 2017.  Defendants moved to vacate the order and dismiss plaintiff's complaint, which the initial judge denied on August 3,

---

[8]  These minutes are not part of the appellate record.

2017. In that order, the initial judge: continued the temporary restraints, including a prohibition against conducting any meetings and passing any resolutions, but allowed an annual "Board of Trustee" meeting on August 11, 2017,[9] which all members were required to attend; ordered all funds in plaintiff's corporate bank account be held by defendants' counsel, "who will only use those funds for the monthly expenses of the Corporation, including payroll for the Imam and monthly utility bills, after [forty-eight] hours['] notice to [p]laintiff's counsel . . . who may object to any proposed payment with the [c]ourt"; prohibited the use of the entrusted funds for defendants' counsel fees; and ordered other relief not germane to this appeal. The temporary restraints reinstated fifteen members, pursuant to the January 19, 2014 resolution, with sole authority over the Trust.

Defendants contended that during that annual meeting, all fifteen members of the Board passed a resolution on behalf of the corporation to repay codefendant Rahim approximately $6500 for a loan he had made to the Trust.

After a four-day bench trial, Judge Smith invalidated the January 2, 2014 meeting amending the Documents and creating the Governors. In so doing, contrary to plaintiff's contentions, the judge found that the December 2013 and

---

[9] In an obvious typographical error, the order specifies the meeting date as August 11, 2018.

January 2014 meeting notices were sent, and the January 2, 2014 meeting was held. Nevertheless, the judge determined both notices "insufficient and [non-]compliant" with the Documents because they failed "to state the nature of the proposed amendment." The judge further determined that even if the January 2, 2014 resolution was validly adopted, a majority of the Board later invalidated the resolution during the July 9, 2017 special meeting of the Board. The judge found the Directors had authority to act at that meeting and a quorum was not required at that meeting.

Apart from her trial decision, the trial judge apparently considered plaintiff's motion to enforce litigant's rights because defendants did not comply with the August 3, 2017 order. The judge ordered codefendant Rahman to refund $6500 to the Trust.[10]

Defendants argue the initial judge should have vacated the temporary restraining order and dismissed plaintiff's complaint because it did not have authority to file suit. They also contend the trial judge: admitted "improper evidence" at trial; interfered with the business judgment rule by voiding the

---

[10] Defendants aver in their merits brief: "Although the original order and notification called for payment and refund to be made to Mr. Rahman[, t]he reality was that the actual person who held the loan and who received the funds was Mr. Rahim. That has now been corrected by the court." The record does not contain a corrected order or any other document from the judge making that correction.

Board's resolutions; erred in denying their motion for reconsideration; and improperly ordered the return of funds paid to codefendant Rahim. We find no merit in these arguments and affirm.

Turning first to the trial judge's decision, we recognize our limited scope of review following a bench trial. In re Tr. Agreement Dated Dec. 20, 1961, 399 N.J. Super. 237, 253 (App. Div. 2006), aff'd, 194 N.J. 276 (2008).

> A trial judge's [factual] findings are binding on appeal as long as those findings are supported by adequate, substantial credible evidence. Such deference is particularly "appropriate when the evidence is largely testimonial and involves questions of credibility." This standard . . . does not absolve this court from conducting a painstaking review of the record. [This court] may not . . . substitute [its] view of the evidence if [it] determine[s] that the trial judge's findings are supported by the [record].
>
> [Ibid. (citations omitted) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)).]

We, nevertheless, review de novo the trial court's legal conclusions. Kas Oriental Rugs, Inc. v. Ellman, 394 N.J. Super. 278, 285 (App. Div. 2007).

Defendants claim the trial judge based her decision on the insufficiency and noncompliance of the notices for the meetings at which the invalidated measures creating the Governors were adopted, a ground not advanced by plaintiff in its pleadings or subsequent arguments through the trial proceedings, during which plaintiff advanced only that the notices were not sent and the

12

meetings were never held. Defendants complain that they did not have an opportunity to present evidence to counter the trial judge's conclusion.

The record belies defendants' argument. Paragraph 12 of plaintiff's complaint alleges written notification was a prerequisite to a valid meeting under Articles IV and IX of the Documents. Paragraph 14 provided "that without written notification or any meeting held," defendants "signed an invalid '[r]esolution' . . . establishing [Governors]." In the next paragraph, plaintiff claimed, "[t]he alleged January 2, 2014 '[r]esolution' . . . is invalid because it was . . . not done as part of any notified meeting, as required by the [Documents.]" The first count of the complaint further prayed for "the equitable relief to which [p]laintiff is entitled, including" the nullification of the resolution and dissolution of the Governors.

In determining whether an issue was raised so as to conform to Rule 4:5-2,[11] we held "all facts, reasonable inferences and implications are to be

---

[11] Rule 4:5-2 provides, in part:

> Except as may be more specifically provided by these rules in respect of specific actions, a pleading which sets forth a claim for relief . . . shall contain a statement of the facts on which the claim is based, showing that the pleader is entitled to relief, and a demand for judgment for the relief to which the pleader claims entitlement. Relief in the alternative or of several different types may be demanded.

considered most strongly in favor of the pleader." Spring Motors Distribs., Inc. v. Ford Motor Co., 191 N.J. Super. 22, 29-30 (App. Div. 1983), rev'd in part on other grounds, 98 N.J. 555 (1985). "A complaint . . . is not required to spell out the legal theory upon which it is based." Farese v. McGarry, 237 N.J. Super. 385, 390 (App. Div. 1989). It "must 'fairly apprise the adverse party of the claims and issues to be raised at trial.'" Teilhaber v. Greene, 320 N.J. Super. 453, 464 (App. Div. 1999) (quoting Spring Motors Distribs., Inc., 191 N.J. at 29).

Rule 4:9-2 provides:

> When issues not raised by the pleadings and pretrial order are tried by consent or without the objection of the parties, they shall be treated in all respects as if they had been raised in the pleadings and pretrial order[.] If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings and pretrial order, the court may allow the pleadings and pretrial order to be amended and shall do so freely when the presentation of the merits of the action will be thereby subserved and the objecting party fails to satisfy the court that the admission of such evidence would be prejudicial in maintaining the action or defense upon the merits.

Plaintiff's complaint fairly apprised defendants that its claim was based, in part, on the validity of the notices under the terms of the Documents. Indeed, at trial, defendants' counsel sua sponte told the judge the defense had no objection to the Documents being placed into evidence and the judge reviewing

same; and had no objection when plaintiff's counsel formally moved the Documents. And, as the trial judge noted in rejecting defendants' argument made in connection with its reconsideration motion, "defendant[s] argued emphatically that the meetings did in fact take place and as evidence that they did take place they provided the [c]ourt with proof of notice, and it is that notice that the [c]ourt found to be deficient[.]"

Defendants argued in their trial closing and in their reconsideration motion, and now reprise on appeal, that the judge failed to apply the business judgement rule. Defendants seek to apply the holding in Seidman v. Clifton Sav. Bank, S.L.A.: "Under the business judgment rule, there is a rebuttable presumption that good faith decisions based on reasonable business knowledge by a board of directors are not actionable by those who have an interest in the business entity." 205 N.J. 150, 166 (2011). As such, defendant argues the action establishing the Governors should be free from attack because, under Seidman, the "conduct of corporate affairs" cannot be "questioned or second-guessed" "except in instances of fraud, self-dealing, or unconscionable conduct[.]" Ibid.

Defendants' argument disregards that part of the Court's holding that

> a decision made by a board of directors pertaining to the manner in which corporate affairs are to be conducted should not be tampered with by the judiciary so long as the decision is one within the power delegated to the directors and there is no showing of bad faith.

15

A-0130-18T4

[In re PSE & G S'holder Litig., 173 N.J. 258, 277 (2002) (emphasis added) (quoting Exadaktilos v. Cinnaminson Realty Co., 167 N.J. Super. 141, 151 (Law Div. 1979), aff'd o.b., 173 N.J. Super. 559 (App. Div. 1980)).]

The first question to be answered in analyzing the applicability of the business judgement rule is "whether the actions were authorized by statute or charter[.]" Green Party v. Hartz Mountain Indus. Inc., 164 N.J. 127, 147 (2000); see Siller v. Hartz Mountain Assocs., 93 N.J. 370, 382 (1983). As we previously recognized:

> The business judgment rule bars judicial inquiry into the decisions of the board of directors made in good faith. However[,] that rule applies where the board is authorized to make the decision. The business judgment rule does not apply to decisions that are beyond the limits of the by[]laws.
>
> [Reilly v. Riviera Towers Corp., 310 N.J. Super. 265, 270 n.4 (App. Div. 1998) (citation omitted) (quoting Sulcov v. 2100 Linwood Owners, 303 N.J. Super. 13, 31 (App. Div. 1997).]

The trial judge was, therefore, required to determine if the actions establishing the Governors was authorized by the Documents in order to address defendants' argument. That determination necessitated a review of the Documents. Defendants' failure to comply with the notice requirements rendered the business judgment rule inapplicable because the actions taken on December 22, 2013 and January 2, 2014, to change plaintiff's corporate structure

16                                                                      A-0130-18T4

and the manner in which plaintiff's board of directors are chosen were unauthorized per the notice requirements.

That failure likewise rendered inapplicable N.J.S.A. 15A:3-2. Defendants argue the corporate acts establishing the Governors and its powers were valid under that statute even if the Trust was without the power to act, and the trial judge did not allow them to make this argument. Defendants cite to the first sentence of the statute: "No act of a corporation . . . shall be invalid because the corporation was without capacity or power to do that act[.]" N.J.S.A. 15A:3-2.

Defendants, however, overlook the second part of that sentence and subsection (a): "but the lack of capacity or power may be asserted . . . [i]n a proceeding by a member or trustee against the corporation to enjoin the doing of any act[.]" N.J.S.A. 15A:3-2(a). Plaintiff did just that by bringing suit to enjoin the contested actions taken at the December and January meetings.

Our review of the record leaves us convinced Judge Smith's factual findings are supported by the record evidence and are entitled to our deference; and that her legal conclusions are sound. As stated, the judge recognized the "precise" language of Article XI of the Documents—wording that was unchanged by any amendment—that required the notice of meeting to state "the nature of the proposed amendment." We will not disturb the court's finding that

17 A-0130-18T4

the notices failed to meet the notice requirement, and her conclusion: "If notice, therefore, is insufficient and is not compliant with the requirements set forth in [the Documents], no amendment generated therefrom can survive." Nor will we overturn the judge's alternative finding that, even if the December and January meeting notices were compliant, the measures creating the Governors "could not survive the [Board's] July 9, 2017 decision" rescinding those measures.

We affirm that portion of the decision substantially for the reasons set forth by Judge Smith in her well-reasoned written opinion. We particularly agree with the judge's assessment that the Documents, or any subsequent version thereof, do not contain a quorum requirement, rejecting the mention of quorum requirements in the minutes of an August 22, 2014 annual meeting. As such, a majority of the entire Board constituted a quorum. See N.J.S.A. 15A:6-7(a) ("A majority of the entire board, or of any committee thereof, shall constitute a quorum for the transaction of business, unless the certificate of incorporation or the bylaws shall provide that a greater or lesser number constitutes a quorum[.]"). The nine members present at the July meeting met that requirement.

We determine the balance of defendants' arguments regarding trial errors to be without sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E). We add only the following brief comments.

Inasmuch as the meetings were nullities because of the notice failure, defendants' contentions that Board members had other notice of the meetings, and that the vote was not impacted by that failure, are without merit. The actions taken were invalid under the Documents.

The admission of the weather report and trip ticket in evidence, over the objection of defendants' counsel, was harmless. The report and trip ticket were proffered by plaintiff to prove the January meeting did not take place because of the snowy conditions at the meeting location in Atlantic City, and one member who claimed to be at the meeting was working in Philadelphia. The judge rejected plaintiff's argument, and those proofs, finding that the meeting was held. The admitted evidence had no impact on the trial judge's ultimate decision and did not at all prejudice defendants.

Judge Smith's trial decision, based on evidence adduced during a full trial, rendered moot the temporary restraints entered by the initial judge. The trial judge's decision restored authority over the Trust to plaintiff. Any temporary restraints, imposed during the pendency of the trial, were subsumed by that decision. "An issue is [considered] 'moot' when the decision sought in [the] matter, [if] rendered, [would] have no practical effect on the existing controversy." New Gold Equities Corp. v. Jaffe Spindler Co., 453 N.J. Super. 358, 385 (App. Div. 2018) (quoting N.J. Div. of Youth & Family Servs. v. A.P.,

408 N.J. Super. 252, 261 (App. Div. 2009)).  Thus, defendants' contention that the failure to vacate the temporary restraints is moot.

Defendants' argument that the initial judge erred when he failed to dismiss plaintiff's complaint because a quorum was not present when the decision to file suit was made, does not warrant discussion.  R. 2:11-3(e)(1)(E).  As evidenced by the trial record, and the trial judge's decision, plaintiff had authority to file suit against defendants and the decision to do so was properly made at a duly-constituted meeting.  We further note, contrary to defendants' suggestion, the initial judge did not find that a valid quorum requirement existed but rather determined that it was too early in the process to determine whether plaintiff had authority to file the current lawsuit.  He subsequently created a quorum requirement in his August 17, 2017 order granting plaintiff's request for a preliminary injunction only for the pendency of this litigation.

Our decision effectively rejects defendants' contention that the trial judge erred in denying their motion for reconsideration.  "Motions for reconsideration are governed by Rule 4:49-2, which provides that the decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015).  Thus, we review a trial judge's denial of a motion for reconsideration for an abuse of discretion and will disturb that decision if the

court's original ruling was palpably incorrect or irrational or failed to appreciate the significance of probative, competent evidence. Ibid. As we have decided, Judge Smith's ruling, based on competent, sufficient evidence in the record, was rational and correct.

Finally, defendants contend the trial judge erred in granting plaintiff's motion to enforce litigant's rights, compelling Rahim to repay $6500 to the Trust because the "order to return was against the weight of the evidence." Defendants did not list the April 13, 2018 order granting that relief in their notice of appeal or civil case information statement. We have made clear "it is only the judgment or orders designated in the notice of appeal which are subject to the appeal process and review[.]" 1266 Apartment Corp. v. New Horizon Deli, Inc., 368 N.J. Super. 456, 459 (App. Div. 2004). We refuse to consider an order if the appellant "did not indicate in his notice of appeal or case information statement that he was appealing from the order[.]" Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 460-61 n.1 (App. Div. 2002). Furthermore, defendants have not supplied a transcript of the trial judge's oral motion decision, referenced in the April order. The only transcript related to that motion is one from August 23, 2018, mentioning that the court denied defendants' motion for reconsideration of the April 13, 2018 order and setting forth the trial judge's

reasoning on plaintiff's second motion to enforce litigant's rights.[12] Defendants have not appealed from either the denial of the mentioned reconsideration motion or the judge's grant of the second motion to enforce litigant's rights, requiring that $6500 be paid to the Trust within ninety days and denying plaintiff's request for sanctions against Rahim.[13]

## II.

Intervenors, eighteen congregants of the mosque, claim the trial judge erred when she denied their motion to intervene under Rule 4:33-1. Intervenors advance the same arguments made to the trial judge, aptly synopsized by Judge Smith in her written decision:

> [Intervenors] seek to intervene as [of] right in the action claiming they are members that hold a cognizable property interest – their membership in the [Trust], to "which they have provided both money, sweat, and energy, and whose walls are enshrined with their effort,[14]" and that interest relates to the property which is the subject of the action[,] and the disposition of the action may impair or impede their ability to protect that interest.

---

[12] That transcript also contains the trial judge's oral decision denying defendants' reconsideration motion.

[13] Defendants have not provided either of the trial judge's last orders.

[14] The judge quoted intervenors' brief submitted in support of the motion.

A-0130-18T4

In their merits brief, intervenors elucidated that they "should have been permitted to intervene in the litigation below" because their interest at question "is the right to participate in the control and direction of their religious organization[.] It is not one which is collateral; rather, it is direct and flows from their status as a member."[15]

The trial judge, despite finding that intervenors "have an interest in this litigation," denied their motion concluding, "they have not shown that there is an inability to protect that interest without intervention and that the current parties do not provide adequate representation of the interest." The judge also concluded intervenors "view[ed] the word 'membership' much too broadly," because "membership," was limited to the Board.

Although our review of the trial judge's decision on a motion to intervene under Rule 4:33-1 is de novo, N.J. Dep't of Envtl. Prot. v. Exxon Mobil Corp., 453 N.J. Super. 272, 285 (App. Div.), certif. denied, 233 N.J. 378 (2018), we affirm Judge Smith's decision substantially for the reasons set forth in her cogent written decision.

---

[15] Intervenors did not claim permissive intervention under Rule 4:33-2 before the Law Division or on appeal before this court. Therefore, we view intervenors' application to intervene solely under Rule 4:33-1, intervention as of right. See State v. J.M., 182 N.J. 402, 410 (2005) (issue not raised in trial court, even constitutional one, ordinarily not considered on appeal).

A-0130-18T4

We have recognized the four criteria set forth in <u>Rule</u> 4:33-1 for determining a motion to intervene as of right:

> The applicant must (1) claim "an interest relating to the property or transaction which is the subject of the transaction," (2) show [that the movant] is "so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest," (3) demonstrate that the "[movant's] interest" is not "adequately represented by existing parties," and (4) make a "timely" application to intervene.
>
> [<u>Meehan v. K.D. Partners, L.P.</u>, 317 N.J. Super. 563, 568 (App. Div. 1998) (quoting <u>Chesterbrooke Ltd. P'ship v. Planning Bd. of Twp. of Chester</u>, 237 N.J. Super. 118, 124 (App. Div. 1989)).]

"As the rule is not discretionary, a court must approve an application for intervention as of right if the four criteria are satisfied." <u>Exxon Mobil Corp.</u>, 453 N.J. Super. at 286 (quoting <u>Meehan</u>, 317 N.J. Super. at 568). Further, "<u>Rule</u> 4:33-1 is construed 'liberally.'" <u>Allstate N.J. Ins. Co. v. Neurology Pain Assocs.</u>, 418 N.J. Super. 246, 254 (App. Div. 2011) (quoting <u>Meehan</u>, 317 N.J. Super. at 568). "Consistent with this liberal construction, our courts take a practical approach in determining whether a moving party has a cognizable interest in litigation that it is entitled to protect by intervention." <u>Id.</u> at 254-55.

Although the trial judge, in paraphrasing the four criteria, did not articulate <u>Rule</u> 4:33-1's exact language, contrary to intervenors' contention, it is clear she correctly considered the proper standards. We essentially agree with

intervenors' observations in their merits brief that the underlying litigation between plaintiff and defendants "was to establish the process, procedures, and who [was] permitted to vote for the [Trust]/Mosque Board of Directors." They further acknowledge that the litigation was the result of "an intra-organizational power struggle" with "two distinct groups[,]" one group, plaintiff, comprised "of the current [Board] who wishe[d] to maintain control of the organization . . . [and d]efendants, on the other hand, [who] wish[ed] to utilize a thirty-member [Governors] committee to pick and elect [d]irectors."

The trial judge correctly recognized that intervenors were not members under the Documents. Instead, they sought to interject themselves in the governing process although they had no rights under the corporate structure set forth in the Documents.

"Non-profit corporate associations . . . are given the utmost latitude in their regulation and management of intracorporate affairs." Loigman v. Trombadore, 228 N.J. Super. 437, 450 (App. Div. 1988). "[A] voluntary association may, without direction or interference by the courts, draw up for its government and adopt rules, regulations and by[]laws which will be controlling as to all questions of . . . doctrine or internal policy." Davidovich v. Isr. Ice Skating Fed'n, 446 N.J. Super. 127, 154 (App. Div. 2016) (second alteration in original) (quoting Loigman, 228 N.J. Super. at 450). A non-profit organization's

"private law generally is binding on those who wish to remain members." Higgins v. Am. Soc'y of Clinical Pathologists, 51 N.J. 191, 202 (1968).

Further, nonprofit corporations are governed by the provisions of N.J.S.A. 15A:1-1 to 16-2. See Newfield Fire Co. No. 1 v. Borough of Newfield, 439 N.J. Super. 202, 212 (App. Div. 2015). The statutory scheme requires a nonprofit corporation to set forth in the certificate of incorporation "[t]he name of the corporation" and "[t]he purpose or purposes for which the corporation is organized." N.J.S.A. 15A:2-8(a)(1) and (2). In addition, the method for electing members of the board of directors, or trustees, shall be set forth in either the certificate of incorporation or the corporation's bylaws, N.J.S.A 15A:2-8(a)(6),[16]; which are to "be adopted by the board at its organization meeting," N.J.S.A. 15A:2-10(a). "Thereafter, the board shall have the power to make, alter and repeal bylaws unless that power is reserved to the members in the certificate of incorporation or the bylaws[.]" N.J.S.A. 15A:2-10(a).

The ultimate holding by the trial judge restored control of the Trust to plaintiff, and the Board—the "membership" specified in the Documents—has

---

[16] The report of the Nonprofit Law Revision Committee explains, however, that N.J.S.A. 15A:2-8(a)(3) and (5) "make[s] clear that nonprofit corporations need not have members."

control of the Trust as the governing body. Despite the clear definition of "membership" in the Documents, and the powers conferred therein to the Board to "increase said Board from seven initial members to another number provided that it has the requisite two[-]thirds of the seven members['] (five) vote[s]," and to amend the Documents "by a majority vote of those voting at any meeting of the membership called for that purpose, provided that the notice of meeting of the membership shall have stated the nature of the proposed amendment," intervenors claim their general membership entitles them to a staked claim in the process.

That claim is contrary to the clear language of the Documents. Intervenors attempted to interject themselves in the underlying litigation even though they had no interest in its subject matter. And, as the trial judge found, plaintiff and defendant adequately represented the competing interests of the factions—which did have a recognized interest under the Documents—vying for control of the Trust. Intervenors did not satisfy the four criteria set forth in Rule 4:33-1. As such, the trial judge properly denied their motion to intervene.

We determine the balance of intervenors' arguments, including their assertions that: (1) "there should be an appeal as of right where the interest in question is the subject matter of the litigation below; the subject matter is equitable in nature; and where a proposed intervenor's motion to intervene

pursuant to R[ule] 4:33-1 is denied"; (2) "the trial court did not provide the evidentiary standard it applied when it determined [intervenors] failed their required proofs"; and (3) their reliance on an inapposite case, <u>Hardwick v. First Baptist Church</u>, 217 N.J. Super. 85, 92 (App. Div. 1987), to be without sufficient merit to warrant discussion in this opinion. <u>R.</u> 2:11-3(e)(1)(E). We add only that the first argument runs contrary to our holding in <u>Huny & BH Assocs. Inc. v. Silberberg</u>, 447 N.J. Super. 606, 610 (App. Div. 2016) that "treat[ing] the denial of a motion to intervene as of right as final and appealable as of right" was not consistent with New Jersey practice and underlying policies, reasoning that the "Rules are intended to limit interlocutory and fragmentary appeals that would delay the disposition of cases and clog our courts," <u>id.</u> at 609. And, unlike the plaintiffs in <u>Hardwick</u> who were granted membership status only to have their membership status removed in a discriminatory application of the bylaws, 217 N.J. Super. at 87-88, intervenors were never granted membership status.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

28

A-0130-18T4